Argued and submitted April 23, on appeal and cross-appeal, judgment modified and otherwise affirmed September 12, 1990

In the Matter of the Marriage of

Berthamae H. HOWARD,
*Respondent - Cross-Appellant,*
*and*

David E. HOWARD, Sr.,
*Appellant - Cross-Respondent.*

(D8612-68899; CA A60824)

798 P2d 683

Robert A. Bennett, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were Kathryn T. Whalen and Bennett & Durham, Portland.

Jack L. Kennedy, Portland, argued the cause for respondent - cross-appellant. With him on the brief were Susan E. Watts and Kennedy, King & Zimmer, Portland.

Before Graber, Presiding Judge pro tempore, and Joseph, Chief Judge, and Edmonds, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

In this dissolution case, husband appeals the division of property and the award of costs to wife. Wife cross-appeals, seeking modification of the valuation of husband's lessor's interest in a manufacturing facility or, in the alternative, modification of the payment schedule in the judgment.

The parties were married for 41 years. Husband is the president of Purdy Corporation, which manufactures paint brushes and paint rollers. Wife has not worked outside the home for over 35 years. The couple have three adult sons, all of whom are employed by the corporation. Husband's annual corporate compensation at the time of trial was $200,000. His net monthly salary is approximately $12,000. He has also received occasional stock bonuses and has an account with the corporation that allows him to charge personal expenses or borrowings to it that he is then obligated to repay. He has the use of a company car and a chauffeured limousine and has insurance benefits and an expense account.

When the parties separated, wife began receiving a $41,000 salary from the corporation as a "consultant," but she performs no services. Her net monthly salary is $2,264. She also has the use of an automobile and is provided medical and dental insurance by the corporation. Husband testified that he planned for the company to continue providing the salary and the benefits after the dissolution.

Purdy Corporation owned 9 1/2 acres of vacant land in north Portland. On February 1, 1980, the corporation leased the land to husband for 16 years, with two 5-year renewal options. The lease is part of an arrangement that permitted husband to construct a manufacturing facility with financing from the Oregon Economic Development Commission (OEDC). To secure the financing, OEDC received a defeasible title to the building, which will revert to husband when the debt is paid in 1995. OEDC leased the building back to husband until 1995. Husband then leased it to the corporation for 16 years, with two 5-year renewal options, the same period as in the ground lease from the company. The lease to the corporation provides that the annual rent may increase by 50 percent of the annual increase in the Consumer Price Index for the Portland area, but the rent will not go down if the index goes down.

At the time of trial, the monthly lease payment to husband was $21,580. After deductions for husband's rent under the ground lease and the monthly payments on the OEDC debt, he receives a positive cash flow estimated at between $16,000 and $24,000 a year. When the OEDC debt is paid in 1995, the lease to the corporation during the remaining year of the initial lease and during the renewal periods, if the options are exercised, will produce a net cash flow in excess of $300,000 per year. Since the lease to the corporation, husband has transferred portions of the building to the corporation in order to reduce his construction debt and to decrease the corporation's monthly rent.

The leasing arrangements were structured in the light of husband's long-term plan to give control of the corporation to his sons. The plan entails transferring the land and the building to the sons in such a way that no tax burden will be incurred. In 1981, the corporation sold the land, subject to husband's lease, to a partnership made up of the sons. When the ground lease terminates, the owner of the land, which is now the partnership, automatically becomes the owner of the building. The earliest that that could happen is 1996, when the building and ground leases' original terms expire, a year after OEDC is to be paid off. If husband exercises the 5-year options to renew his ground lease, title will not pass to the partnership until 2001 or 2006.

As another part of his plan, husband began to give shares of stock in the corporation to the sons in blocks of 300, 100 shares to each. The transfers were made once a year from 1983 through 1986, but two transfers were made in 1987. As a result, husband, who was once a majority shareholder, owned approximately 28 percent of the corporation's stock at the time of trial.

The dissolution petition was filed in December, 1986. In January, 1987, husband owned 1,647 shares of the stock. During that month, he transferred 300 shares to his sons, as had been his practice. On June 1, 1987, wife sent husband a proposed mutual restraining order barring the parties from transferring any assets until the dissolution was completed. Husband indicated that he would sign the order after wife had signed it. On June 9, 1987, he transferred 300 shares to the sons without wife's knowledge. He admitted that he made the

transfer with knowledge that the restraining order was going to be entered but claimed that it was only a part of his long-term plan. After the transfer, he owned 1,047 shares.

A restraining order against husband was entered on August 3, *nunc pro tunc* July 27, 1987. A stipulated restraining order against both parties was entered on August 11. Nevertheless, on October 31, 1987, husband sold certain building improvements to the corporation at their depreciated book value. That transfer reduced his debt to the corporation and reduced the rental payment from the corporation to husband by $1,250 per month.

It is uncontested that the building, the lease and the income from it are valuable assets acquired during the marriage. Both parties offered expert testimony about the present value of the lease. The experts used different rent increase estimates and different discount rates to establish present value. Wife's expert's valuation for the remainder of the original lease and both of the option periods was $1,150,350. Husband's expert stated the present value to be $883,262.[1]

Husband testified that he does not intend to exercise the ground lease options, because the lease arrangement is part of his plan to transfer all of his interests in all of the property to the sons free of estate tax. He claims that he would not exercise the options because, at the end of the original lease term, he will be 75 years old and has already had heart surgery and a stroke. He testified that the options were created when he was not sure whether his sons would become involved in the corporation and that he had then wanted the flexibility to decide what he would do on the expiration of the original lease term, if the sons did not want to control the corporation. There will be no taxes on husband's estate if the building goes to the owner of the land at the expiration of the lease in 1996 and he is still alive.

---

[1] Because wife alleged that the October, 1987, transfer was improper, her expert used the rental rate before that date. He then estimated an annual rent increase of 1.5 percent and applied a discount rate of 10 percent for the remainder of the initial lease, 10.5 percent for the first five-year option and 11.5 percent for the second. If he had included the rent reduction due to the transfer of part of the building to the corporation, his valuation would have been approximately $120,000 less overall. Husband's expert used an 11 percent discount rate and assumed no rent adjustments for increases in the Consumer Price Index. He also factored in the decreased amount resulting from the October transfer.

The trial court awarded wife permanent spousal support of $5,700 per month, less $2,264, so long as she receives that much in salary from the corporation. The court valued husband's stock in the corporation at $715 a share and applied that to 1,347 shares, for a total of $963,105; it awarded all of the stock to him. It also awarded husband a townhouse in Lake Oswego with a net value of $72,164; a profit sharing plan worth $27,722; an IRA worth $48,837; a life insurance policy worth $61,157; a condominium in Palm Springs, California, with a net value of $155,024; and an undivided one-half interest in numerous limited partnerships, but with the obligation for all indebtedness or liabilities relating to them. The court found it as likely that husband would not exercise either option as that he would exercise both and concluded that it was equitable to base the property distribution on the value of the lease for the rest of its original term and the first option period.[2] The court found both husband's and wife's experts credible and, assuming the exercise of only the first option, averaged their opinions to arrive at a value of $812,855, which it awarded to husband. Wife was awarded the family home with a net value of $99,646; jewelry worth $21,585; furniture worth $21,073; an IRA valued at $2,188; a life insurance policy worth $65,336; and an undivided one-half interest in the limited partnerships, with no obligations or liabilities. She also was awarded a judgment against husband for $868,686.50, which consisted of one-half the value of the stock and one-half the value of the rent from the building. Any payments that would be made by husband to or for the limited partnerships would be credited against wife's judgment, which would accrue interest at 9 percent per annum. The judgment is payable in monthly installments of $3,500 through and including January 1, 1995; thereafter, the monthly payments would increase to the level necessary to amortize the judgment over 8 years. The court also ordered that each party pay its own attorney fees but ordered husband to pay wife $22,664.55 in costs.

Before trial, wife filed a contempt motion against

---

[2] The record is not clear that the trial court consistently recognized that the options in the ground lease belong to husband and the options in the building lease belong to the corporation. Of course, the options are interrelated, but it is the ownership of the land at the termination of all of the leases that is critical to the tax avoidance scheme. The reversionary interest in the land was transferred to the sons' partnership as part of the scheme.

husband, which was set for hearing at the same time as the trial. The court found husband in contempt by reason of the October, 1987, transfer of parts of the building to the corporation, but it also found that the transfer reduced husband's debt to the corporation by an amount equal to the value of the transferred parts, thus increasing the net equity of the assets that was divided among the parties. Accordingly, the court did not award damages to wife for the contempt.

Husband assigns as error the trial court's valuation of his corporate stock. He does not contest the per share value but argues that he owned only 1,047 shares at the time of trial and that it was error to include the 300 shares of stock that he gave his sons in June, 1987. He asserts that there was no evidence that he made the transfer because of the divorce proceeding or for any reason other than the long-term plan to vest control of the corporation in the sons. He claims that he made two gifts in 1987 because of a 350-share stock bonus that he received in 1986. He argues that there was no finding that he transferred the stock in contempt of the restraining order, nor could there be, because there was no restraining order in effect when it was made. Therefore, he asserts that there was no basis for treating him as if he still owned the 300 shares.

Wife argues that there is evidence that the June stock transfer was an effort to remove property from the marital estate. She points out that, given that that transfer was the first time that husband had made two gifts in one year and had exceeded the gift tax exemption and that he knew that a restraining order was going to be entered soon, the transfer was improper. She also asserts that the shares should have been included in the marital estate, because husband had no authority, even in the absence of a restraining order, to make the transfer without her permission under ORS 107.105(1)(f).[3]

■ The judgment is unclear as to why the trial court included the disputed 300 shares in the marital estate. It incorporates findings of fact and conclusions of law stated in a

---

[3] ORS 107.105(1)(f) provides, in part:

"Subsequent to the filing of a petition for annulment or dissolution of marriage or separation, the rights of the parties in the marital assets shall be considered a species of co-ownership, and a transfer of marital assets pursuant to a decree of annulment or dissolution of marriage or of separation entered on or after October 4, 1977, shall be considered a partitioning of jointly owned property."

letter opinion dated January 17, 1989, but no finding was made concerning the June stock transfer. When a judgment is ambiguous or obscure, it must be considered as a whole, *Bennett v. Bennett,* 208 Or 524, 529, 302 P2d 1019 (1956), but, in the exercise of *de novo* review, we will not disturb it unless we are convinced that an equitable result has not been reached. *Halvorson and Halvorson,* 48 Or App 887, 890, 618 P2d 20 (1980).

■ ■ We hold that it was appropriate to treat the 300 shares as if they were owned by husband at the time of trial. Under ORS 107.105(1)(f), parties ought to be entitled to approve or disapprove any substantial disposition of any marital assets held as "a species of co-ownership." When a transfer of marital assets has been made without the consent of the other spouse, the trial court may consider that in determining what is a "just and proper" property division. Notwithstanding husband's explanation for making the second 1987 transfer, he transferred the stock knowing that wife desired that no assets be sold or given away. Even if the trial court could not have held husband in contempt for the transfer, because there was no restraining order at the time, it did not need to find a contempt in order to include the 300 shares in the marital estate. We approve including all 1,347 shares in the valuation.

■ Husband assigns as error the trial court's valuation of the building lease. He does not contest that wife is entitled to one-half of the proper value; neither does he argue that the existence of the various options is wholly irrelevant to valuation. He claims that the trial court's judgment is not just and proper, because it effectively forces him to exercise the ground lease options, because he cannot otherwise afford to pay the judgment. He argues that the court's finding that "it is equally likely that neither option period would be exercised as it is that both option periods would be exercised by the corporation" is not supported by the evidence. In fact, he argues, it is highly unlikely that any of the options will be exercised, because only he has the right to exercise the options on the ground lease and, thus, he effectively controls whether the building lease options will be exercised. He cites cases from Maryland and Minnesota[4] that have used an "if, as and when"

---

[4] *Green v. Green,* 64 Md App 122, 494 A2d 721 (1985); *Salstrom v. Salstrom,* 404 NW2d 848, 858 (Minn App 1987).

approach in valuing and dividing unexercised stock options. He claims that, as those courts did, we should consider the nature of the property right in an option, namely "the right to choose." He argues that a result that compels the exercise of an option has the effect of destroying the very nature of that right. An if, as and when approach would preserve his right to choose while protecting wife's interest in proceeds from the lease if the options are exercised.

He claims that we have indicated our support of that approach in *Becknal and Becknal,* 75 Or App 576, 706 P2d 209 (1985). We modified the judgment there to award the wife a one-half interest in unexercised stock options, which would require her to pay one-half of the purchase price "if and when" the options were exercised, as well as to incur one-half of any tax liability. 75 Or App at 576. Husband also refers to *Babb and Babb,* 30 Or App 581, 567 P2d 599, *rev den* 280 Or 521 (1977), where a "wait and see" approach was used to divide the parties' interest in a 20-acre farm with a lease option on another 20 acres. The trial court had awarded the farm to the parties as co-tenants with the wife getting a one-third share and the husband a two-thirds share. If the farm were not sold within 8 years, the wife would have a judgment for one-third of the net fair market value of the land, equipment, crops, buildings and livestock. The husband was given the sole right to occupy and operate the farm. In upholding the division, we found that "[t]he value of [the] farm depends to a large extent upon whether the option to purchase is exercised and whether the goals for operation of the farm are realized," 30 Or App at 585, and concluded that the wife was entitled to a share of the potential gains that their investment had when it was purchased.

Husband here also argues that his intent in designing the ground and the building leases is important and that the judicial result ought not to disturb the long-term plan to vest ownership of the building and control of the corporation in his sons with minimal tax exposure. On the basis of those considerations, he requests that wife be awarded one-half of the income from the building lease, including the options if they are exercised, or, alternatively, one-half of the present value of that lease and one-half of the income from it if the options are exercised. He also argues that the valuations based on the option periods should be corrected and the judgment adjusted,

because the trial court miscalculated the value of the lease through the first option period by using the wrong figure for his expert's valuation. Wife's expert valued the lease through the first option period at $816,850, and husband's expert valued it at $626,411, not $808,860, as the trial court found.

Wife asserts that the options will produce a substantial stream of income, if they are exercised. She would be deprived of that valuable asset, she claims, if an "if, as and when" approach were taken and husband remained in control of the options. She argues that the options to renew the ground lease could be exercised now, which would make actual the potential of those options. Requiring the options to be exercised and giving her one-half of the income would not affect the intent of husband's plan, she claims; it would merely delay for ten years the sons' ownership of the building. She suggests that the options be transferred to her so that, if husband were to die during one of the periods when an option could be exercised, the option would not be in his estate and there would still not be any taxes.

She distinguishes the cases cited by husband on the ground that, unlike the stock options at issue in them, the options to renew the ground lease may be exercised now. She claims that, by valuing the first building lease option and giving her a judgment, husband's ability to give the asset away by not exercising his options was preserved. She also distinguishes *Becknal and Becknal, supra,* because the options there were the husband's nonassignable right to buy stock in the future at a certain price, conditional on his continued employment and terminable on merger, consolidation or dissolution of the company. The court's decision there, wife argues, was a reasonable way to divide fairly a future right with speculative value. Additionally, although she concedes that the trial court incorrectly stated husband's expert's opinion of the value of the building lease through the first option period, she asserts that that error was harmless, because husband's expert understated the value.

This is a long-term marriage. Although husband contributed more than wife in identifiable economic ways, both contributed to the full extent of their ability. Our goal is to ensure that the parties be disentangled on as equal a basis as possible. *Glatt and Glatt,* 41 Or App 615, 622, 598 P2d 1237

(1979). However, in awarding resources to each spouse, we must consider "the limitations of the capabilities and property of the parties." *Haguewood and Haguewood,* 292 Or 197, 207, 638 P2d 1135 (1981). That is, we must pay attention to the entire situation and seek a solution that minimizes economic harm and maximizes economic benefits *to the parties.*

Husband presently has total control over the options on the ground lease. If they are exercised now, he will have committed himself to pay almost $5,000 per month in rent for more than 15 years; however, in that event, ownership of the building, in effect, stays in him, and he would have the benefit of collecting substantial monthly rent. On the other hand, only the corporation can exercise the building lease options. It is clear that we cannot order the corporation to exercise its options, nor could wife, in any event. Still, both lease arrangements are so inextricably tied together that any determination that we make must include considerations affecting both. We conclude that the trial court should not have evaluated the building lease as if one option to extend the lease had been exercised. Instead, we adopt a distribution plan that recognizes husband's estate plan, which wife does not challenge, but which protects her in all eventualities.

We modify the judgment to award wife a judgment for one-half of the present value of the remaining original building lease term, plus the right to one-half of any income received from the building after the termination of the present 16-year lease and one-half of the value of 1,347 shares of stock in the corporation. Wife's money judgment against husband is $596,552.50, including $115,000 as one-half the original lease term's value and $481,552.50 as one-half the value of husband's corporate stock. We also modify the judgment awarded to require husband to make monthly payments sufficient to amortize it in 15 years, at 9 percent interest, commencing April 1, 1989.

■    Our division provides wife with just over $35,000 more than husband; however, husband has more resources and opportunities for economic self-sufficiency than she. That, coupled with the likelihood that the options will not be exercised, leads us to conclude that it is equitable to divide the marital assets unequally in favor of wife. *See Pierson and Pierson,* 294 Or 117, 124, 653 P2d 1258 (1982).

■    Husband also assigns as error the trial court's award of $22,664.55 to wife as costs. He claims that, because the judgment gives her substantial means of support, she has equal access to resources with which to pay for her part of this litigation. *See Haguewood and Haguewood, supra,* 292 Or at 213. This case involves complicated marital assets and required expert evidence on the value of some of those assets. Husband had access to most of the information relevant to the disputed assets. The corporation paid for his appraisals and his accountant's fees. Wife has borne her own expenses in this litigation. The costs awarded are appropriate.

The rest of the dissolution judgment is affirmed on appeal and on cross-appeal.[5]

On appeal and on cross-appeal, the judgment is modified by: (1) amending paragraph 12 to fix the amount of the judgment at $596,552.50; (2) eliminating subparagraphs 12A, 12B and 12C and substituting therefor the requirement that, commencing April 1, 1989, husband make equal monthly payments sufficient to amortize the judgment in 15 years; (3)

---

[5] This is the property division, as we have modified it:

| Item | Husband | Wife |
|---|---|---|
| Family Home - Rosewood Way | | $ 99,646 |
| Lake Oswego Townhouse | $ 72,164 | |
| Palm Springs Condominium | 155,024 | |
| Stock - 1,347 shares @ $715 per share | 963,105 | |
| Jewelry | | 21,585 |
| Furniture | | 21,073 |
| Profit Sharing Plan | 27,722 | |
| IRA | 48,837 | |
| IRA | | 2,188 |
| Life Insurance | 61,157 | 65,336 |
| Lease Option Interest | One-half Income | One-half Income |
| Original Lease Interest | 230,000 | |
| Limited Partnerships | One-half | One-half |
| | $1,558,009 | $209,792 |
| Less: | | |
| Debt to Corporation | $ (191,475) | |
| Gross Division of Net Marital Estate | 1,366,534 | $209,792 |
| Judgment | (596,552.50) | 596,552.50 |
| Net Distribution | $ 769,981.50 | $806,344.50 |

amending subparagraph 12E by eliminating the words "Notwithstanding the provisions of subparagraphs A through D of this paragraph 12 requiring payment of the judgment balance on or before February 1, 2003,"; (4) striking the first sentence of paragraph 13; and (5) adding a provision that one-half of net income from the building received by husband after the expiration of the existing lease be paid by him to wife within 7 days of its receipt by him; judgment otherwise affirmed. No costs to either party.