Argued and submitted May 10, spousal support award modified; otherwise affirmed
October 30, 1991

In the Matter of the Marriage of

Michael B. GOFF,
*Respondent,*
*and*

Jody Yvonne GOFF,
*Appellant.*

(15-89-05041; CA A65453)

820 P2d 33

J. Richard Urrutia, Springfield, argued the cause for appellant. With him on the brief was Thorp, Dennett, Purdy, Golden & Jewett, P.C., Springfield.

Bruce C. Moore, Eugene, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

In this dissolution proceeding, wife appeals the amount of the spousal support award.[1] The issue is whether the trial court erred in awarding wife support of $1,000 per month for two years, $1,500 per month for the following four to seven years[2] and $2,000 per month thereafter.[3]

This was a 22-year marriage. Wife was a full-time homemaker and caregiver for the parties' three children. At the time of trial, she was working part-time in a clerical position and caring for the two children who are still at home. Husband is employed as a commodity buyer for a wholesale building materials company. His gross income exceeds $130,000 per year. The last full-year figures in the record show a net income of $76,200 in 1988. His income has increased each year for the last decade. Although the parties disagree as to husband's more recent earnings, it appears that his net income in 1989 was approximately $90,000. Wife argues that the permanent spousal support award is inadequate to meet her fixed expenses, does not reflect the parties' standard of living during the marriage and fails to take into consideration her contributions, as a homemaker spouse, to husband's career. She seeks $2,000 per month until the children are grown, and $3,000 per month thereafter. We review *de novo*. ORS 19.125(3).

We begin by noting that an award of permanent spousal support was appropriate in this case, in the light of wife's limited earning capacity, the parties' standard of living, the likelihood that she will never recover economically from her extended absence from the work force and the fact that husband has achieved an advantageous economic position through the parties' joint efforts. *Franzke and Franzke,* 51 Or App 35, 624 P2d 632, *aff'd* 292 Or 110, 637 P2d 595 (1981); *Goebel and Goebel,* 56 Or App 52, 641 P2d 59 (1982).

---

[1] She also appeals the trial court's valuation of marital property. However, we are satisfied that the court did not err in that regard.

[2] The $1,500 per month amount is to continue until the youngest child reaches the age of 18 or, if in school, until the age of 21.

[3] Neither party challenges the trial court's authority to formulate a "step-up" spousal support plan. Therefore, nothing in this opinion should be interpreted as either approval or disapproval of that kind of arrangement.

The only issue is whether the amount of the support award is adequate.[4]

■     The record shows that the parties are in their early forties. They owned a motorhome, two boats, a gun collection, IRAs and a hot tub spa. They took frequent family vacations, including trips to Hawaii, California, Washington and Florida. Wife testified that, "[whenever] there was something we wanted, we would go and buy it and pay cash for it." She alleges that their total monthly expenses during the marriage were between $5,000 and $6,000. Additionally, the record shows that the parties spent over $61,000 to purchase stock in husband's closely held corporation.

During the marriage, wife was primarily responsible for paying the bills and balancing the parties' checking account. She testified that it was sometimes necessary to use funds from their money market account to pay for all of their purchases. Husband testified that the parties tried to live within a budget of $4,000 per month, with withdrawals from savings and money market funds being necessary only for major purchases. He acknowledged that his awareness of family expenditures was limited to a review of the checking account statements and that he might not know about purchases paid directly out of other accounts.

The record shows that, during the last three years of the marriage, monthly withdrawals from the checking account alone ranged from $1,800 to $5,700. At trial, wife provided a summary of actual monthly household expenditures from April, 1989, when the parties separated, through mid-January, 1990. The summary, which did not take into account anticipated expenditures such as health insurance payments, property taxes and home repairs, reflected an average expenditure of $4,760 per month. According to her uniform support affidavit, wife's fixed expenses for house payments, utilities, transportation, insurance, food, clothing and medications total $2,800 per month. The cost of credit card payments, investments, entertainment, gifts and vacations add an additional $2,200 per month, for a total of $5,000

---

[4] A spousal support award is to be set at an amount that is "just and equitable," ORS 107.105(1)(d), and that allows the spouse to enjoy a standard of living that is not "overly disproportionate to that enjoyed during the marriage." ORS 107.105(1)(d)(E),(F).

per month, excluding costs related to the children. We conclude that wife is entitled to more spousal support than the trial court awarded her.

Spousal support modified to $2,000 per month for two years, then $2,500 per month until the youngest child reaches the age of 18, or 21 if in school, and $3,000 per month thereafter permanently; otherwise affirmed. Costs to wife.