Argued and submitted March 14, property division vacated and remanded; child support award reversed and remanded for recalculation; otherwise affirmed July 27, 2005

In the Matter of the Marriage of

Fonda Marie TIMM,
*Respondent,*
*and*

Brett Alan TIMM,
*Appellant.*

02-11-41713; A123762

117 P3d 301

George W. Kelly argued the cause and filed the briefs for appellant.

Damien R. Yervasi argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.*

BREWER, C. J.

_____

* Armstrong, J., *vice* Richardson, S. J.

**BREWER, C. J.**

Husband appeals a judgment of dissolution, assigning error to the trial court's division of property and awards of spousal and child support. We conclude that, (1) in light of the Supreme Court's decision in *Kunze and Kunze*, 337 Or 122, 133, 92 P3d 100 (2004), the trial court erred in treating assets acquired during a period of premarital cohabitation as "marital assets," (2) the trial court did not err in awarding spousal support, and (3) the trial court should have added the spousal support payments to wife's income for purposes of calculating child support. We vacate and remand the property division for reconsideration and reverse and remand the child support award for recalculation. Otherwise, we affirm.

We review the facts *de novo*, deferring to the trial court's express and implied credibility findings. *Tomos and Tomos*, 165 Or App 82, 87, 995 P2d 576 (2000). The parties began living together in May 1991. A few months later, wife was diagnosed with multiple sclerosis (MS). For the next four years, the parties cohabited in what the trial court characterized as "more than a casual, expense sharing relationship." During that period, husband and wife both worked for the State of Oregon and earned retirement benefits from the Public Employees Retirement System (PERS). In 1993, husband acquired a rental property from his parents under a land sale contract.[1]

The parties married in 1995. Two years later, wife's illness forced her to stop working outside the home. For the next few years, wife was a homemaker, caring for the home and the parties' children, whom they adopted in 1999 and had fostered before the adoption. Both of the children have special needs. Because of those special needs, the federal and state governments subsidized the adoption, and wife receives monthly adoption assistance payments to meet the children's extraordinary needs.

The parties separated in 2002. Six weeks after the separation, husband's parents foreclosed on the contract on

---

[1] The parties also acquired a number of other assets during their marriage that are not at issue here.

the rental property that husband had purchased from them before the marriage. During the 11 years since husband had purchased it, the property had appreciated in value approximately $10,000 and husband had paid approximately $10,000 toward the purchase price.

After hearing the evidence, including testimony by husband and husband's mother, the trial court found that the foreclosure was a sham. Specifically, the court found that husband "caused the foreclosure to improve his financial position or at least to improve his parents' financial position to the detriment of [wife]." The court based that finding on husband's "demeanor while testifying, the contradictions by his mother's affidavit, the timing of the events, [and husband's] business acumen and intelligence." As a result, the trial court imputed an additional $20,000 to the marital estate, which represented the equity in the rental property. As part of the property division, the court awarded wife half of that equity, $10,000. The court also awarded wife half of the PERS benefits that husband earned from December 2, 1991, until the date of the dissolution. In addition, the court ordered husband to pay wife spousal maintenance of $300 per month until the parties' younger child reached the age of 18 and $500 thereafter for an indefinite duration. Finally, the court ordered husband to pay $328 per month in child support.[2]

Husband's first and second assignments of error relate to the property division. In his first assignment of error, husband challenges the trial court's inclusion of the equity in the rental property in the property division. He argues that, in light of the foreclosure, the trial court erred in imputing any equity from the rental property to the marital estate. In his second assignment of error, husband asserts that the trial court erred in awarding wife a share of his retirement benefits accumulated during the period of the parties' premarital cohabitation. In his third assignment of error, husband argues that the trial court erred in failing to include both the adoption assistance payments and the spousal support award in wife's income when it calculated the

---

[2] The remaining provisions of the dissolution judgment are not pertinent to the issues on appeal.

child support award. Finally, husband assigns error to the award of spousal support.

■ We first address husband's challenge to the inclusion of the rental property equity in the property division. ORS 107.105(1)(f) authorizes a trial court to provide

> "[f]or the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. A retirement plan or pension or an interest therein shall be considered as property. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

We begin our analysis by determining whether the trial court properly considered the equity from the rental property as marital property—that is, property of either or both parties, including property brought into the marriage. *See Kunze*, 337 Or at 133 (describing property owned by either party at the time of dissolution as "marital property"). If the rental property was not marital property, the trial court lacked authority to dispose of it in the judgment of dissolution. *See* ORS 107.105(1)(f) (stating that trial court has authority to dispose only of property "of either or both of the parties"). Husband argues that the rental property was not marital property because he did not own it at the time of dissolution. He asserts that the trial court did not adequately consider all the evidence in determining that the foreclosure was a sham. He also argues that, even if the foreclosure was a sham, the court had no authority to treat the property as marital property, because he was entitled to dispose of his separately acquired asset, and there was no evidence that his parents agreed to transfer the property back to him after the dissolution. We disagree with each of husband's arguments.

First, in determining that the foreclosure was a sham, the trial court made a credibility finding. Based on husband's "demeanor while testifying, the contradictions by his mother's affidavit, the timing of the events, [and husband's] business acumen and intelligence," the trial court

found that husband's explanation of why he failed to contest the foreclosure was not credible and that husband "caused the foreclosure to improve his financial position or at least the financial position of his parents to the detriment of [wife]." We defer to that credibility finding. *Tomos*, 165 Or App at 87.

Given that the trial court found that the foreclosure was a sham, it correctly ignored the foreclosure and determined that the equity in the rental property was marital property. In *Howard and Howard*, 103 Or App 342, 349, 798 P2d 683 (1990), we held that, "[w]hen a transfer of marital assets has been made without the consent of the other spouse, the trial court may consider that in determining what is a 'just and proper' property division." In arriving at that conclusion, we relied on ORS 107.105(1)(f).

We reasoned that, under that statute, parties are entitled to approve or disapprove any substantial disposition of any marital assets held as "a species of co-ownership." *Howard*, 103 Or App at 349. We determined that it would be inequitable to allow a party to dispose of marital property, while a dissolution action is pending, for the purpose of decreasing the amount of property that otherwise would be available for division. We therefore held that a trial court may consider the fact that the transfer of property was a sham in creating a property division that is "just and proper" in all the circumstances. *Id.*

In *Shelley and Shelley*, 127 Or App 616, 873 P2d 464 (1994), we likewise held that, where payments to a third party are designed to reduce the assets available for division in a dissolution proceeding, money so paid should be included in the property division. In that case, the husband made several payments to his brother, purportedly to pay off a debt. The trial court found that the payments were a sham, and we agreed. We determined that, under the circumstances, the wife should have received half of those payments.

In both *Howard* and *Shelley*, the disputed assets were marital assets—a subclass of marital property that consists of assets acquired during the marriage and to which the presumption of equal contribution applies. *See* ORS 107.105(1)(f) ("There is a rebuttable presumption that both

spouses have contributed equally to the acquisition of property during the marriage * * *."); *Kunze*, 337 Or at 133 (describing that class of property as "marital assets"). Because all marital property ultimately is subject to division in a dissolution judgment, however, we see no reason to distinguish between sham transfers of marital assets and sham transfers of other marital property. Accordingly, we reject husband's argument that he was entitled to dispose of the asset because it was not a marital asset.

We also reject husband's argument that there must be evidence of an agreement between him and his parents to retransfer the rental property to him in order to justify including the equity in that property in the property division. In *Shelley*, there was no evidence of such an agreement between the husband and his brother. Rather, we found that the payments from the husband to his brother were designed to reduce the assets available for disposition and concluded that those payments should be included in the property division. So, too, here. Because husband orchestrated the foreclosure to remove from the marital estate property that otherwise would have been available for division, the trial court did not err in including the rental property in the property division.

■ We next consider whether the trial court correctly concluded that the entire equity in the rental property was a marital asset that was subject to the presumption of equal contribution. The trial court determined that the rental property was a marital asset, even though husband acquired the asset before the parties were married, because their premarital cohabitation was "more than a casual, expense sharing relationship." In reaching that conclusion, the trial court relied on our line of decisions holding that, "[i]n determining the value of marital assets, we consider the entire length of the parties' relationship and not simply the time during which they were legally married, so long as during that period of time there was mutual involvement, commingling and interdependence of finances." *Troffo and Troffo*, 151 Or App 741, 746, 951 P2d 197 (1997); *see also Albers and Albers*, 174 Or App 243, 247, 23 P3d 430 (2001) (presumption of equal contribution applied to period before marriage where the parties cohabited and commingled their assets);

*Kampmann and Kampmann*, 108 Or App 407, 410, 816 P2d 642, *modified on other grounds on recons*, 110 Or App 100, 820 P2d 1379 (1991) (whether parties commingled finances during cohabitation is a critical fact for purposes of determining which assets are marital assets); *Caverly and Caverly*, 65 Or App 98, 101, 670 P2d 199, *rev den*, 296 Or 236 (1983) (marital assets consist of "the increase in the value of the parties' joint estate during the combined periods of unmarried cohabitation and marriage").

■■   After the trial court entered judgment in this case, the Supreme Court decided *Kunze*. In *Kunze*, the court construed ORS 107.105(1)(f) in accordance with the analytical framework laid out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and determined that the statute "distinguishes between property brought into the marriage and marital assets[.]" *Kunze*, 337 Or at 133. Thus, if a court determines that a particular asset was acquired before the marriage, the statutory presumption of equal contribution does not apply to it. *Id.* at 133-34. The court also made clear that the commingling of finances during a period of premarital cohabitation cannot transform an asset acquired before the marriage into a marital asset. The court explained that commingling can be considered only at two stages of the property division analysis. First, commingling may be a factor in analyzing whether the statutory presumption has been rebutted when an act of commingling precludes the court from identifying a spouse's separate contribution with sufficient reliability to rebut the statutory presumption that both spouses have contributed equally to the disputed asset. *Id.* at 138. Second, commingling is considered at the "just and proper" division stage of the analysis. *Id.* at 142; *Tsukamaki and Tsukamaki*, 199 Or App 577, 112 P3d 416 (2005).

The *Caverly* line of decisions relied on by the trial court here cannot be reconciled with *Kunze*. In that line of cases, we considered the parties' commingling of finances during a period of cohabitation in determining whether assets constituted marital assets. However, according to *Kunze*, the only relevant inquiry is when an asset was acquired; if it was acquired during the marriage, it is a marital asset, if it was acquired before the marriage, it is not,

regardless of the nature of the parties' premarital relationship. Because our earlier decisions were implicitly overruled in *Kunze,* they are no longer precedent for the proposition that assets acquired during premarital cohabitation can be marital assets.

That conclusion, though, does not end the matter. Husband argues that we should reverse the trial court's award of one-half the equity in the rental property to wife and, on *de novo* review, award all of it to husband. However, the equity in the rental property includes appreciation over the 11 years during which husband owned it. Husband concedes that the portion of the appreciation that accrued during the parties' eight-year marriage is a marital asset. *See Massee and Massee,* 328 Or 195, 206-07, 970 P2d 1203 (1999) (appreciation during the marriage of assets brought to the marriage and separately held by the husband constituted property "acquired" during the marriage and, thus, was a marital asset to which the presumption of equal contribution applied). Husband argues, though, that he rebutted the presumption that wife contributed equally to the appreciation in value of the property during the marriage and that it therefore is just and proper to award the entire asset to him.

Because the trial court concluded that the rental property was a marital asset, it necessarily concluded that the entire equity in that property was a marital asset. The court therefore did not have occasion to determine what portion of that equity was acquired during the marriage. Nor did the court determine whether husband rebutted the presumption of equal contribution with respect to the portion of the equity that accrued during the marriage or what contributions each party made to the equity. Finally, the court did not determine whether, in any event, a just and proper division of the parties' property required inclusion of the entire equity, including the premarital portion. Because, in making their record before the trial court, the parties relied on case law that *Kunze* later supplanted, we do not have an adequate record in this case to make those findings on *de novo* review. *See Massee,* 328 Or at 208-09 (where the record lacked evidence on several important facts, including husband's net worth at the time of marriage and at the time of dissolution, which likely would influence, if not control, any ultimate

property division after remand, resolution of the case required remand to the trial court for the taking of additional evidence and reconsideration). We therefore vacate and remand for reconsideration of the property division portion of the dissolution judgment.

In his second assignment of error, husband challenges the trial court's treatment as marital assets of the amounts accrued in the parties' retirement accounts after the commencement of their cohabitation. The same problem exists with respect to those accounts as exists with respect to the rental property. On remand, the trial court should (1) determine the increase in value of the accounts from 1995, when the parties were married, until the date of dissolution, (2) apply the presumption of equal contribution with respect to the portions of those accounts that constitute marital assets, and (3) in all events, make a just and proper division of the accounts.

■ We next address husband's objections to the spousal support award. Husband asserts that (1) all appellate decisions awarding indefinite spousal support to a disabled spouse have involved long-term marriages and that indefinite support is inappropriate in a shorter marriage like the one here, (2) the trial court erred in ordering stepped-up spousal maintenance when the children turn 18 to offset the loss of child support, adoption assistance, and child-related social security payments, because those payments are designated for the children's support, not wife's, and (3) the spousal support award will leave husband with less disposable monthly income than wife.

The trial court awarded wife spousal maintenance.[3] ORS 107.105(1)(d)(C) lists the factors that a court should consider in making such an award. They include:

"(i)   The duration of the marriage;

"(ii)  The age of the parties;

"(iii) The health of the parties, including their physical, mental and emotional condition;

---

[3] Husband does not challenge the designation of the award as spousal maintenance.

"(iv)    The standard of living established during the marriage;

"(v)    The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property;

"(vi)    A party's training and employment skills;

"(vii)    A party's work experience;

"(viii)    The financial needs and resources of each party;

"(ix)    The tax consequences to each party;

"(x)    A party's custodial and child support responsibilities; and

"(xi)    Any other factors the court deems just and equitable."

The trial court considered each of those factors and determined that an indefinite spousal maintenance award was appropriate. The court placed particular emphasis on the third, fourth, and fifth factors, finding that wife is disabled, will be unable to work in the future, has significant medical expenses, and, without support, cannot approach the standard of living established during the marriage, especially after losing the various payments that she receives for the support of the children. In contrast, the court found that husband is in good health, is well educated and entrepreneurial, and has a good income, a bright future at his current job, and a substantial retirement account. For the following reasons, we uphold the spousal maintenance award.

■    A spouse's limited earning capacity due to health problems is a significant consideration in establishing spousal support. *See Richardson and Richardson*, 307 Or 370, 384, 769 P2d 179 (1989) (indefinite spousal support awarded where wife's earning capacity was impaired due to health problems); *see also Arnot and Arnot*, 136 Or App 347, 350, 901 P2d 971 (1995) (indefinite spousal support awarded where a spouse was disabled by bipolar illness and unable to work); *Curtis and Curtis*, 102 Or App 252, 255, 793 P2d 352, *rev den*, 310 Or 393 (1990) (indefinite support appropriate

due to wife's health problems). Contrary to husband's contention, not all of those cases involved marriages of long duration. In *Curtis*, for example, the parties were married for 11 years. At the time of dissolution, the wife was 34 years old but was unable to work because of health problems. We concluded that "the special circumstances of wife's health problems justify an award of [indefinite] spousal support." *Id.* We therefore ordered the husband to pay the wife $350 per month from his $32,000 gross yearly income.

Although the parties in this case were married for only eight years, we conclude, as in *Curtis*, that wife's health problems and the other circumstances that the trial court identified justify an award of indefinite spousal maintenance.

■■ Moreover, stepped-up spousal maintenance to offset the loss of child support payments can be necessary to ensure that a spouse will continue to enjoy a standard of living not overly disproportionate to that enjoyed during the marriage. *Grove and Grove*, 280 Or 341, 358, 571 P2d 477, *modified on other grounds on recons*, 280 Or 769, 572 P2d 1320 (1977) (noting that one possible approach to structuring support award would call for relatively lower spousal support payments during the years when the wife is receiving substantial child support payments and a somewhat higher permanent award in later years after the child support obligation has terminated); *Goff and Goff*, 109 Or App 447, 451, 820 P2d 33 (1991) (increasing spousal support award after youngest child reached majority). That conclusion does not, as husband asserts, suggest that a parent should apply child support payments toward his or her own support. Rather, it simply recognizes that the expenses of children, parents, and the household often overlap. If a portion of child support payments is regularly applied toward general household expenses that will not be eliminated after the children reach majority, it may be appropriate to increase spousal support to compensate for the loss of those payments. *Grove*, 280 Or at 359. Child support payments, social security disability benefits paid to the children because of wife's disability, and food stamp benefits all fall into that category. Wife will lose almost all of those payments when the children reach majority, and those losses will total more than $700 per month.

The adoption assistance payments, in contrast, are intended to cover the cost of care for children who have extraordinary educational, emotional, or physical needs. *See* Commentary OAR 137-050-0340(5) (2003). Those payments are dedicated exclusively to the children's extraordinary needs, not general household expenses. Parents receiving such payments remain obligated to provide for the basic needs of the children. *Id.* We therefore do not consider the loss of adoption assistance payments in determining whether it is appropriate to increase spousal maintenance when the children turn 18.

■     Under the circumstances, an increase of $200 per month in spousal support after the children reach 18 is appropriate to provide wife with adequate spousal maintenance.

■     We reject husband's argument that the spousal maintenance award will leave him with less disposable income than wife. In calculating wife's disposable income, husband included the adoption assistance payments, which, as noted, should be applied exclusively toward the children's special needs. He also included the social security payments made for the support of the children. Yet, in calculating his own disposable income, husband did not include the $540 per month that he receives as child support for his other children who reside with him. Furthermore, husband did not take into account wife's greater expenses due to her health problems. The trial court stressed that spousal support fell far short of meeting wife's stated monthly expenses, the amount of which husband did not contest, whereas husband was able to meet his own. Again, under the circumstances, we uphold the spousal maintenance award that the trial court made.

Finally, we turn to husband's objections to the child support award. First, husband contends that some or all of the adoption assistance payments that wife receives for the children's special needs should be either included in wife's income for purposes of calculating support or subtracted from his support obligation. Second, he argues that wife's spousal support payments should have been included in her income for purposes of calculating the child support award.

We reject husband's first argument. There is a rebuttable presumption that adoption assistance payments are not includable in the recipient's income for purposes of calculating child support. OAR 137-050-0340(5). As explained above, such payments are intended to meet the extraordinary needs of children and do not relieve a parent from the obligation to provide for the children's basic needs. Husband has not rebutted the presumption that the payments will be used for extraordinary expenses. Although there was evidence that, in the past, wife had not applied the payments exclusively toward the children's special needs, she testified that she will do so in the future, and husband presented no evidence to the contrary. The trial court did not err in excluding the adoption assistance payments for purposes of calculating child support.

With respect to husband's second argument, wife concedes that the trial court was required to include spousal support payments in her gross income for purposes of calculating child support. We accept that concession. *See* OAR 137-050-0390 (providing that, for purposes of calculating child support, "court-ordered spousal support * * * shall be added to the gross income of the parent entitled to receive such spousal support"). Accordingly, we reverse and remand the child support award for recalculation.

Property division vacated and remanded; child support award reversed and remanded for recalculation; otherwise affirmed.