Argued and submitted September 18, 2009, dissolution judgment modified to add an award of maintenance spousal support of $1,500 per month for seven years; otherwise affirmed March 17, petition for review denied July 29, 2010 (348 Or 621)

In the Matter of the Marriage of

Michelle Margaret QUANT,
*Petitioner-Appellant,*

*and*

Robert Stanley CARRIER,
*Respondent-Respondent.*

Coos County Circuit Court
05DM0795; A136186

227 P3d 832

George W. Kelly argued the cause and filed the briefs for appellant.

Monica L. Finch argued the cause for respondent. With her on the brief was Eli D. Stutsman.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

In this dissolution of marriage case, wife assigns error only to the trial court's award of transitional spousal support, in the amount of $2,000 per month for two years, arguing that, because of her health problems and the disparity in the parties' earning capacities, the trial court should also have awarded indefinite maintenance support. ORS 107.105. On *de novo* review of the record, ORS 19.415(3),[1] we conclude that an award of seven years of maintenance support in the amount of $1,500 per month is "just and equitable," ORS 107.105(d)(C)(xi). We modify the dissolution judgment accordingly.

Husband and wife had a relationship that extended over approximately 11 years. They met in Alaska in 1993 and cohabited on and off before they were married in May 1997. They separated in September 2004 after seven years of marriage, and the dissolution judgment was entered in June 2007. At the time of dissolution, husband was 58 and wife was 56 years of age. There are no children of the marriage.

When the parties met in Alaska, wife was working for the Matanuska-Susitana Borough, buying and selling Borough land and handling nonjudicial foreclosures. She was also working as a cocktail waitress. Wife wanted to work in real estate, so she quit her job and cashed out her retirement benefits; she testified, however, that because of the real estate market at that time, she was not successful and, as a result, spent all of her retirement funds on the parties' joint living expenses. While the parties were living in Alaska, husband had other financial commitments that prevented him from contributing to parties' joint household expenses.

Shortly after the parties married, husband began working for a company in Prudhoe Bay, and he continues to be employed in that same job. He also receives military retirement benefits and monthly disability benefits. In 2005,

---

[1] ORS 19.415 was recently amended. Or Laws 2009, ch 231, § 2. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Or Laws 2009, ch 231, § 3. Because the notice of appeal in this case was filed before that date, we apply the 2007 version of ORS 19.415.

his income from all sources was approximately $160,000. Wife did not work full time during the marriage, but she earned income through various part-time endeavors, including buying and selling antiques. When wife had income, the parties shared household expenses equally; when she did not, husband paid the household expenses. Otherwise, they kept their finances separate, with the exception of a few joint investments in real estate. Wife testified that husband's contribution was not sufficient to meet her expenses, and she had to file for bankruptcy in 2002.

The parties moved to Oregon in 1997 and bought a home in Coquille. Husband worked two weeks on, two weeks off, and he would commute between Coquille and Prudhoe Bay. Wife stayed in Coquille and worked to landscape and remodel the parties' home and to develop a nursery business, which never became profitable. In 2002, the parties bought a second property in Coos Bay. They worked together to clear the property and improve the house.

In November 2004, wife was injured in an ATV accident and required surgery. She then experienced a deep vein thrombosis in her leg. Although it was successfully treated, wife testified that she still suffers from leg pain and swelling and must keep her leg elevated. Wife also has back pain and has been diagnosed with "severe discogenic disease at L4-5 with encroachment on the L4-5 neural foramen." She does not wish to consider surgery at the present time and is currently receiving steroid injections for her back. Because of her leg and back symptoms, wife testified that she is able to sit for only 15 minutes at a time. She must keep her leg elevated when possible to avoid swelling. She takes several medications for back pain and is unable to work with plants or to do any heavy lifting.

The parties have been separated since wife's accident. Because wife has been unable to work, husband has been paying all the household expenses since that time. The parties remained married so that wife could stay on husband's medical insurance. Wife testified that she would like to train to be a medical coder and believes that she could become financially self-sufficient with that employment

because it would allow her to work at home and elevate her leg as needed. The training would cost $10,000 and take nine months.

The parties agreed to an equal division of the marital property; however, they disagreed as to the amount and duration of spousal support. On her uniform support affidavit, wife listed monthly expenses of approximately $3,500, and that amount is largely undisputed. Wife asserted that, in light of the length of the relationship, the disparity in earning capacities, and her physical limitations, a reasonable award would be $5,000 in indefinite maintenance support. Husband contended the wife exaggerates her disability, has always been financially independent, and has the ability to be self-supporting. He offered transitional support of $1,500 for three years.

The trial court recognized the disparity in the parties' earning capacities—that wife had no income and some fixed expenses, and that husband had significant income and the ability to assist wife with her expenses. The court further found that it was highly unlikely that, even with retraining, wife would ever attain the earning capacity of husband. The court found, however, that because the parties kept their finances largely separate, wife has had little benefit from husband's earnings during the relationship and has not enjoyed during the marriage a standard of living that would be commensurate with that level of income. The court found further that wife has the ability to supplement her income and that, given wife's employment skills and talents, she could be self-sufficient. The court found that wife's employment possibilities would be only minimally impacted by her physical problems. Because husband had been providing wife with some financial help, the court awarded wife transitional support of $2,000 per month for two years so that she could retrain as a medical coder.

■　On appeal, wife continues to seek indefinite support but considers support of $4,000 per month for two years, followed by $3,000 per month indefinitely, to be equitable. Under ORS 107.105(1)(d)(C), the factors that we consider in awarding maintenance support include:

"(i)     The duration of the marriage;

"(ii)    The age of the parties;

"(iii)   The health of the parties, including their physical, mental and emotional condition;

"(iv)   The standard of living established during the marriage;

"(v)     The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property;

"(vi)    A party's training and employment skills;

"(vii)   A party's work experience;

"(viii)  The financial needs and resources of each party;

"(ix)    The tax consequences to each party;

"(x)     A party's custodial and child support responsibilities; and

"(xi)    Any other factors the court deems just and equitable."

Wife argues that, considering her disability, an award of indefinite spousal support is necessary to enable her to have a standard of living not overly disproportionate to what she enjoyed during the marriage. *See Timm and Timm*, 200 Or App 621, 632, 117 P3d 301 (2005). Husband argues that, as wife testified at trial and as the trial court found, despite her medical problems, wife will be able to work with some retraining and should have no problem attaining the standard of living of the marriage, which was modest.

The parties' dispute on appeal focuses on whether wife has exaggerated her health problems—wife asserting that her disability justified indefinite support, husband asserting that wife is exaggerating and that no maintenance support is justified. They also dispute each other's characterization of the parties' lifestyle. Even assuming, however, that wife has exaggerated her level of disability and that the parties lived modestly, we agree with wife that, considering the length of the marriage, husband's income, wife's expenses,

and the uncertainty of her future earning capacity, an award of maintenance support is warranted. Wife has living expenses of $3,500 per month and, despite her testimony, we are skeptical of her current ability to meet them immediately after training as a medical coder; husband has the ability to help her.

We conclude, however, that indefinite support is not warranted. We agree with the trial court's finding that wife is resourceful; she herself testified that she hoped to be self-sufficient once trained as a medical coder. "In determining the appropriate level of spousal support, we attempt to award 'such amount of money for such period of time as it may be just and equitable' for the supporting party to pay." *Mask and Mask*, 143 Or App 377, 381, 923 P2d 1304 (1996). Transitional support is typically awarded when one spouse has been out of the workforce for an extended period of time and needs education or on-the-job training to prepare for re-entry into the job market. *English and English*, 223 Or App 196, 209, 194 P3d 887 (2008). The purpose of maintenance support, in contrast, is to allow a period of time for the dependent spouse to become financially independent and self-supporting. *Roppe and Roppe*, 186 Or App 632, 635 n 4, 64 P3d 1145 (2003).

We conclude that, in addition to the trial court's award of transitional support of $2,000 per month for two years, an award of maintenance support of $1,500 per month for seven years is just and equitable and will provide wife with sufficient income to be self-supporting as her income from employment grows and until she reaches retirement age and can begin collecting Social Security.

Dissolution judgment modified to add an award of maintenance spousal support of $1,500 per month for seven years; otherwise affirmed.