Argued and submitted March 13, 2014, award of child support reversed and remanded for recalculation, otherwise affirmed February 11, petition for review denied July 30, 2015 (357 Or 595)

In the Matter of the Marriage of

Precious Angelene MORGAN,
*Petitioner-Appellant,*

*and*

Matthew John MORGAN,
*Respondent-Respondent.*

Douglas County Circuit Court
10DO0805DS; A151840

344 P3d 81

George W. Kelly argued the cause and filed the briefs for appellant.

Russell Lipetzky argued the cause and filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.*

FLYNN, J.

---

* Flynn, J., *vice* Wollheim, S. J.

## FLYNN, J.

Wife appeals a judgment of dissolution, challenging the trial court's division of the parties' property, spousal support award to her, and determination of child support. She contends that the property division was inequitable because the trial court based its decision on erroneous findings of fact and awarded husband too great a share of the parties' marital property. She asks that we exercise our discretion under ORS 19.415(3)(b) to review the property division *de novo*. Wife also contends that the spousal support award was inequitable because the trial court erred in calculating husband's future income. Finally, she contends that the child support determination was erroneous as a matter of law because the court erred in calculating the presumed income of both parties.

For the reasons explained below, we review the trial court's property division and spousal support award for abuse of discretion and conclude that the court did not abuse its discretion. The trial court's calculation of the child support obligation, however, fails to take into account the court's finding regarding wife's disability at the time of trial. Therefore, we remand for the trial court to recalculate the child support obligation.

## BACKGROUND

Before addressing wife's request that we exercise our discretion to review the property division *de novo*, we describe the pertinent findings that wife does not challenge.[1] The parties married in October 2000 without a prenuptial agreement and separated in 2009. They have one minor child together. At the time of trial, in 2012, wife was 43 years of age and husband was 44 years of age. Neither was employed.

---

[1] ORAP 5.40(8)(b) provides:

"In those proceedings in which the Court of Appeals has discretion to make one or more factual findings anew on the record and the appellant seeks to have the court exercise that discretion, the appellant shall identify with particularity the factual findings that the appellant seeks to have the court find anew on the record and shall concisely state the reasons why the court should do so."

At the time the parties married, wife's employment history consisted primarily of waitressing, and husband worked for a trailer-manufacturing business owned by his father. The business consisted of two entities—Morgan Built, Inc., and Morgan Built Holdings, LLC. In 2002, husband's father gave husband a majority interest in Morgan Built, Inc., and a minority interest in Morgan Built Holdings, LLC, which owned the property on which Morgan Built, Inc., operated. When husband's father died in 2005, husband inherited the rest of the stock in Morgan Built, Inc., and became the sole member in Morgan Built Holdings, LLC. Husband's income from those business entities was the primary source for payment of family expenses throughout the marriage. In 2008, the business ceased operations and began to liquidate its assets.

In 2009, Morgan Built, Inc., was formally dissolved, and Morgan Built Holdings, LLC, purchased the Vintage Apartments, a mixed-use property in Seattle, Washington. The purchase price of $3,200,000 was funded with money from liquidated business assets plus a promissory note signed by both husband and wife. Husband had been making interest-only payments on the note and relying on proceeds from the apartments of approximately $11,000 per month as his sole source of income. At the time of trial, the fair market value of the Vintage Apartments was approximately $3,000,000 with approximately $850,000 still owed on the note.

The trial court awarded husband and wife joint custody of their child and ordered husband to pay child support in an amount based on findings that husband would have income of $11,000 per month and wife would have income from full-time, minimum-wage work. The court ordered that husband pay transitional support to wife in the amount of $3,000 per month for a period of three years and spousal maintenance in the amount of $1,000 for an additional five years. In its property division, the trial court awarded wife several assets including the family house, which had equity of approximately $85,000, and a 2004 Volvo worth $5,190. Assets awarded to husband included the Vintage Apartments, which had equity of more than two million dollars, a guitar collection worth $48,520, a 2009 BMW worth

$21,558, and a 2000 Dodge pickup worth $1,789. The court also ordered that husband pay to wife an equalizing money judgment in the amount of $150,000. Husband assumed responsibility for the mortgage on the Vintage Apartments, and wife assumed responsibility for the mortgage on the family house. Each party also assumed responsibility for any debt he or she incurred following the date of separation.

## PROPERTY DIVISION

Wife argues that the court's award of the Vintage Apartments entirely to husband without a larger equalizing judgment was error. Unless we are convinced to exercise our discretion to review the property division "anew upon the record," ORS 19.415(3)(b),[2] we review the determination for abuse of discretion. *Morton and Morton*, 252 Or App 525, 539, 287 P3d 1227 (2012). As set out above, wife asks that we exercise our discretion to review the property division *de novo*. We exercise that discretion sparingly and only in exceptional cases. ORAP 5.40(8)(c); *State v. S. N. R.*, 260 Or App 728, 733, 320 P3d 569 (2014).

Here, wife contends that we should exercise *de novo* review of the trial court's property division because its award of the Vintage Apartments exclusively to husband and without a larger equalizing judgment relied on factual findings that are "just plain wrong." We carefully consider wife's arguments because, as we observed in *S. N. R.*, a lower court's reliance on a crucial finding that "does not comport with the evidence in the record" can be a reason to exercise our discretion to review *de novo*. 260 Or App at 733; *see also Hanscam and Hanscam*, 247 Or App 207, 219, 268 P3d 715 (2011).

As pertinent to this inquiry, the trial court reasoned:

"While the goal of 'economic self-sufficiency' is worthwhile, it cannot be achieved in this case without selling the proverbial 'golden goose' because the only other asset of consequence is the family home which has an equity of approximately $85,000. A common option—an equalizing

---

[2] The 2009 legislature changed the scope of our review in most equitable proceedings to make review "anew upon the record" a matter for the court's discretion in appeals filed after June 4, 2009. Or Laws 2009, ch 231, §§ 2, 3.

judgment—is also unrealistic because the current income stream from the apartments does not accurately reflect the cost of doing business (Husband is making interest only payments on the mortgage and has not set aside adequate reserves to resolve several existing maintenance needs); therefore, to increase the amount of the mortgage (assuming that option is available) to pay a judgment in the amount sought by Wife would appear to only * * * postpone the inevitable. * * *

"* * * [T]he negative consequences of the liquidation of the Vintage Apartments far outweigh the equities that favor Wife's position. Although the record does not contain the information needed to calculate the tax consequences or closing costs of a sale with precision, the evidence is that both factors would reduce the net proceeds substantially before Wife received her equal share. Thus, the asset would be lost, and Wife would receive a significant portion of [Husband's father's] estate—clearly in violation of [Husband's father's] testamentary intent. While Wife may be entitled to a monetary judgment in a lesser sum, it is not 'just and proper' to award an amount that would compel the sale of the Vintage Apartments."

Wife first challenges the finding that "substantial" tax liability and closing costs would result from a sale of the Vintage Apartments. She also, relatedly, asserts that the trial court wrongly found that a larger equalizing judgment would compel husband to sell the Vintage Apartments. The trial court's findings that closing costs would reduce the proceeds from a sale of the property and that a larger equalizing judgment could force the sale of the property are permissible inferences from the evidence, and we reject wife's challenge to those findings without further discussion.

There is also some evidence that a sale of the apartments would result in a significant taxable event. The evidence establishes that equity in the Vintage Apartments ranged from $2.085 to $2.155 million at the time of trial. The key dispute between the parties' experts was the extent to which income from a sale of the property would be treated as ordinary income—which would be taxable—or as capital gain—which would not be taxable due to complexities of the tax code that are not necessary to explain in this opinion. The trial court credited the testimony of husband's expert

that a substantial amount of sale proceeds would be taxable as ordinary income and listed that concern as one of the reasons for its property distribution.

On appeal, wife cites legal authority that she contends clearly demonstrates husband's expert was wrong and, thus, that the trial court's finding was wrong. *See* IRC § 1250 (2012) (explaining circumstance under which proceeds from the sale of depreciable realty can be treated as "ordinary income" subject to tax). In the trial court, however, wife did not cite any legal authority addressing the issue of tax consequences from a sale of the Vintage Apartments. Rather, the key finding disputed by wife—the tax consequences of a forced sale—was presented to the trial court as merely a choice between conflicting expert testimony, and the testimony of husband's expert provided some support for the trial court's finding. Accordingly, even if we accept wife's explanation that the finding contradicts governing tax law, the factual mistake is a product of the manner in which wife litigated the issue below. We are not persuaded that this is an exceptional case in which we should exercise our discretion to review *de novo*. *See* ORAP 5.40(8)(d).[3] We, thus, review the trial court's determination of a "just and proper" property division for an abuse of discretion. In doing so, we are bound by the trial court's express and implicit factual findings if they are supported by any evidence in the record. *Sconce and Sweet*, 249 Or App 152, 153, 274 P3d 303, *rev den*, 352 Or 341 (2012).

ORS 107.105(1)(f) provides for the division of marital property "as may be just and proper in all the circumstances." Determining what division is "just and proper" involves consideration of several factors set out in ORS 107.105(1)(f) as well as equitable considerations that the Supreme Court has instructed trial courts to consider in the interest of promoting "consistency and predictability in dissolution decrees[.]" *Kunze and Kunze*, 337 Or 122, 132, 92

---

[3] ORAP 5.40(8)(d) sets out a nonexclusive list of considerations relevant to our decision to exercise our discretion, including whether the trial court made express factual findings or credibility findings; whether the trial court's decision comports with "uncontroverted" evidence or "express findings" supported by the record; and whether the appellant alerted the trial court to the disputed factual matter and its importance.

P3d 100 (2004) (citation omitted). Under the abuse of discretion standard, we will not disturb factual findings that "are supported by evidence in the record," and "we will disturb the court's decision only if it misapplied the statutory and equitable considerations required by ORS 107.105(1)(f)." *Christensen and Christensen,* 253 Or App 634, 640-41, 292 P3d 568 (2012).

As the Supreme Court explained in *Kunze,* the framework for arriving at a "just and proper" distribution of property ordinarily should begin with determining whether the asset was brought into the marriage or was acquired during the marriage (a "marital asset"). 337 Or at 133-34. There is a general presumption that both spouses contributed equally to "marital assets" and that, "absent other considerations, the 'just and proper' division" of those assets is an equal division. *Id.* at 134; ORS 107.105(1)(f)(C). Wife, however, does not dispute the trial court's determinations that the equity in the Vintage Apartments is represented by the investment of husband's inheritance and is not subject to the presumption of equal contribution. *See* ORS 107.105(1)(f)(D)(i) (property acquired by gift to one party, including inheritance, and separately held by that party is not subject to the presumption of equal contribution).

In the absence of an applicable presumption, the trial court must distribute the property according to what is "'just and proper' under the circumstances." *Cf. Benson and Benson,* 263 Or App 554, 557, 328 P3d 819 (2014) (describing process if presumption is rebutted). That determination "concerns the equity of the property division in view of all the circumstances of the parties." *Kunze,* 337 Or at 135. Appropriate equitable considerations include

> "the social and financial objectives of the dissolution, as well as * * * the preservation of assets; the achievement of economic self-sufficiency for both spouses; the particular needs of the parties and their children; and * * * the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling."

*Id.* at 135-36 (citations omitted). If no evidence supports those or other equity considerations, it is "just and proper"

to award a marital asset that was acquired "free of any contributions from the other spouse" to the spouse who separately acquired it. *Id.* at 135 (citing *Pierson and Pierson*, 294 Or 117, 123, 653 P2d 1258 (1982)).

Wife contends that the "commingling" consideration cuts strongly in favor of an equal division of the equity in Vintage Apartments and that the trial court abused its discretion by focusing exclusively on the goal of "preserving assets." Wife relies on *Finear and Finear*, 240 Or App 755, 766-68, 247 P3d 1238 (2011), *rev dismissed*, 351 Or 580 (2012), in which we said that the husband's reliance on inherited property as the sole financial resource for the family favored "allocating *some portion* of the original inheritance to [the] wife." (Emphasis added.) As wife correctly points out, the trial court expressly found, "it is clear that Husband 'integrated' his inheritance 'into the common financial affairs of the marital partnership through commingling' in the same fashion as in [*Finear*]" and that the inherited business "morphed into the income stream from the Vintage Apartments which has provided financial support for both parties since that time."

Wife, however, reads too much into the trial court's finding and into our statement in *Finear*. In *Finear* the parties were married 21 years and, after the husband received a substantial inheritance, lived entirely off of the inheritance and the income that it generated. The husband used a substantial portion of his inheritance to purchase and improve property that, by the time of trial, had increased in value by approximately $900,000 over the original purchase price. The trial court awarded the wife assets worth $418,000 and awarded the husband the remainder of his inherited assets, worth more than $1.4 million. *Finear*, 240 Or App at 759.

We explained that the husband's demonstrated intention to keep his inheritance as separate property weighed "strongly against dividing the inheritance/trust assets" but that the parties' reliance on the inheritance as their sole family income weighed in favor of allocating "some portion of the original inheritance to [the] wife." *Id.* at 765-66. Ultimately, we held in *Finear* that the trial court's award

to the wife of assets amounting to half of the increased property value gave her "a significant portion of the inheritance/trust property" and was "well within its discretion[.]" *Id.* at 768. We emphasized:

> "'[B]ecause it is an equitable consideration, commingling is not an all or nothing proposition. Instead, commingling falls along a spectrum. In some cases, a particular asset may be commingled to such an extent that it would be inequitable to divide it in any manner other than equally. In other cases, an asset may be less commingled and therefore subject to a split into unequal shares.'"

*Id.* at 765 (quoting *Tsukamaki and Tsukamaki*, 199 Or App 577, 586, 112 P3d 416 (2005) (citations omitted)).

As in *Finear*, the findings here describe husband's intention that his inherited business interest remain a separate asset. Following his father's death, husband remained the sole stockholder of Morgan Built, Inc., and sole member of Morgan Built Holdings, LLC, which owns the Vintage Apartments. As both president and CEO of the corporation, husband was in charge of the business decisions. He conferred with wife only on "minor matters." As in *Finear*, those factors weigh against giving wife a share of the asset purchased by husband's inherited business, but the parties' reliance on that inheritance as their source of income weighs in favor of a property division that gives wife *some* portion of husband's inheritance. In *Finear*, the trial court adequately addressed that consideration by awarding the wife half of the gain in value from investment of the husband's inheritance. The parties here were married less than half the time of the parties in *Finear*, and the investments from husband's inheritance lost rather than gained value during the marriage.[4] The equalizing judgment that husband has been ordered to pay wife is effectively a portion of what remains of his inheritance. Under the circumstances, there is no basis for concluding that the trial court's property division constituted an abuse of discretion.

---

[4] Although the apartments' purchase was partly funded by the loan for which husband and wife both signed, husband was assigned full responsibility for that obligation, and his failure to make any payments toward principal means the equity in the apartments comes entirely from the investment of Morgan Built Holdings' assets.

Moreover, we emphasized in *Finear* that "[a] just and proper division of marital property concerns the equity of the property division in view of all the circumstances of the parties." 240 Or App at 766 (citing *Kunze*, 337 Or at 135; *Gano-Ridge and Ridge*, 211 Or App 393, 409, 155 P3d 84 (2007)). Here, the trial court was primarily concerned with the circumstance that the apartments were "the proverbial 'golden goose'" that allowed the parties to live on an income stream significantly greater than either party could achieve in the job market. Indeed, as explained below, the court set both the spousal and child support awards based on the $11,000 per month income stream from the apartments. It was in this context that the court highlighted the need to preserve the asset and not "award an amount that would compel the sale of the Vintage Apartments." *See Haguewood and Haguewood*, 292 Or 197, 206-08, 638 P2d 1135 (1981) (observing that providing for a "self-sufficient, post-dissolution life apart" sometimes "cannot be well served by a simple division of assets," and that "we can expect no more golden eggs if the decree kills the goose that lays them"; affirming trial court's award of the family business entirely to the husband). Ultimately, as in *Finear*, "there is no basis for concluding the trial court misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires * * *." 240 Or App at 768 (citing *Kunze*, 337 Or at 136). As the trial court acknowledged, "reasonable minds will differ concerning the equitable priorities herein," and we are unwilling to say that the court's property division was an abuse of its discretion.

## SPOUSAL SUPPORT

As set out above, the trial court awarded wife transitional spousal support of $3,000 per month for three years and spousal maintenance of $1,000 per month for an additional five years. Wife does not ask us to exercise *de novo* review of this determination, but she contends that the trial court abused its discretion because it treated husband's income as limited to $11,000 and because it "seems to have downplayed or ignored" several of the factors that ORS 107.105(1)(d) directs the court to consider in awarding spousal support. We disagree.

ORS 107.105(1)(d) provides for awards of spousal support in "an amount of money for a period of time as may be just and equitable[.]" In reviewing that determination for an abuse of discretion, we are bound by the trial court's findings of historical fact that are supported by any evidence in the record, and we will disturb the trial court's determination of what constitutes a "just and equitable" amount only if the court "misapplied the statutory and equitable considerations required by ORS 107.105." *Berg and Berg*, 250 Or App 1, 2, 279 P3d 286 (2012) (citing *Kunze*, 337 Or at 136).

We disagree with wife that the trial court's spousal support award assumed husband's income would remain limited to the apartment proceeds or that the court failed to consider the "health of the parties" or the "standard of living established during marriage." The order indicates that the court based its spousal support determination on wife's needs in the short and long term and that it considered the required statutory factors, specifically that "the step-down award is proper given Wife's heightened need for support during the initial period given her slow recovery from her medical condition; however, given Wife's age, an award of indefinite support is not warranted."

Wife argues that the amount and duration of the spousal support award are not "in line" with awards we have set as "just and equitable" in cases for which we exercised *de novo* review. *See Quant and Carrier*, 234 Or App 336, 227 P3d 832, *rev den*, 348 Or 621 (2010); *Gillis and Gillis*, 234 Or App 50, 227 P3d 809 (2010). Our role here, however, is not to make our own determination of the "just and equitable" amount of spousal support. The trial court appropriately exercised its discretion in arriving at its determination of a "just and equitable" amount of spousal support.

## CHILD SUPPORT

The trial court ordered the parties' child support obligations to be based on income of $11,000 per month for husband and minimum wage earnings for wife. Wife contends that the determination as to her obligation is wrong because it conflicts with the trial court's finding that she was unable to work through 2012. She also contends that

the determination as to husband is wrong because it fails to take into account his potential income from employment. We review whether the trial court correctly calculated the parties' incomes under the guidelines for legal error. *McMurchie and McMurchie*, 256 Or App 712, 721, 304 P3d 751 (2013).

The Division of Child Support promulgates rules pursuant to ORS 25.275(1) that establish a formula for determining child support awards based on presumed income. *Id.* at 715. After the dissolution trial, the Division of Child Support significantly modified the rule defining how presumed income is calculated for purposes of child support awards. OAR 137-050-0715 (2012), *amended by* OAR 137-050-0715 (2013). However, we review the presumed-income calculations for legal error under the previous rule because the trial court calculated child support in this case prior to those amendments, which became effective on July 1, 2013. *See* OAR 137-050-0700 (2013) ("Any change to the guidelines applies to all calculations prepared on or after the effective date of the change. * * *.") A parent's presumed income means "the actual or potential gross income of a parent," depending on the circumstances. OAR 137-050-0715(1) (2012). For a parent who has a "verified disability," the presumed income is whatever actual income the parent receives. OAR 137-050-0715(7)(b) (2012).

Wife's first challenge to the court's child support calculation emphasizes the "verified disability" provision. As set out above, the trial court set wife's child support obligation according to a potential income from full-time minimum-wage employment. Wife argues that this conflicts with the trial court's express findings. Specifically, the court's order sets out:

> "[T]he medical evidence supports a finding that Wife suffers from the impingement of a nerve in the pelvic region, and that she suffers pain and the impairment of bodily functions as a result. * * * [T]he best evidence is that Wife should be physically capable of employment in 2013."

We interpret the trial court's findings to mean that wife had a "verified disability" through at least 2012, a determination that required it to use her "actual income" to calculate

the child support obligation through at least 2012.[5] *See* OAR 137-050-0715(7)(b) (2012). Therefore, we remand for a recalculation of the child support obligation because the court's calculation is not consistent with its express findings.

Wife also argues that the trial court miscalculated husband's presumed income for purposes of child support. She relies on *McMurchie*, in which we explained how—under OAR 137-050-0715(7)(b) (July 2010)—trial courts should evaluate the child support obligation of a parent who is able to work but instead relies only on unearned actual income. *See* 256 Or at 724-25. We decline to reach that issue, however, because wife proposed a different interpretation of the rule below and because our remand for recalculation of wife's obligation will require the trial court to recalculate child support as to both parents[6] "using the new guidelines[,]" OAR 137-050-0700, which have significantly altered the language we interpreted in *McMurchie*.

## CONCLUSION

In summary, we hold that the trial court did not abuse its discretion in its property division or determination of spousal support. We do, however, conclude that the trial court erred as a matter of law in calculating wife's presumed income for child support purposes.

Award of child support reversed and remanded for recalculation; otherwise affirmed.

---

[5] There is no express definition of "verified disability" in the child support guidelines or in case law interpreting those guidelines. Given its plain meaning, however, "verified" in this context means "authenticated by affidavit" or "substantiated by competent proof." *Webster's Third New Int'l Dictionary* 2543 (unabridged ed 2002). The court's emphasis that medical evidence substantiates an "impairment of bodily functions" sufficient to prevent wife from performing gainful work throughout 2012 amounts to a determination that wife had a "verified disability" through that time.

[6] *See, e.g.*, *State v. Nguyen*, 268 Or App 789, 797, 344 P3d 49 (2015) (observing that remand for recalculation of one parent's support obligation would give trial court an opportunity to revisit its determination of the other parent's income).