250 November 29, 2023 No. 611

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

Michael BARZILAY,
*Petitioner-Respondent,*
*and*

Edith BARZILAY,
*Respondent-Appellant.*

Multnomah County Circuit Court
17DR15209; A175355

Patricia L. McGuire, Judge.

Argued and submitted August 1, 2022.

Andrew W. Newsom argued the cause and filed briefs for appellant. Also on the opening brief was Holtey Law, LLC.

Peter Bunch argued the cause for respondent. Also on the brief was The Law Firm of Peter Bunch, LLC.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Property division reversed and remanded; otherwise affirmed.

**ORTEGA, P. J.**

In this domestic relations case, wife appeals from a judgment of dissolution, challenging the trial court's property division. The trial court had held a dissolution trial to resolve specific issues that the parties could not resolve by stipulation. Months after that trial concluded, the court issued a first letter opinion with a property division that resulted in an equalizing judgment against wife in the amount of $13,234.50. After husband filed a letter objecting to the opinion, to which wife responded, the trial court issued a revised letter opinion that altered the property division, resulting in an equalizing judgment against wife in the amount of $92,954.97. Wife raises four assignments of error on appeal.

In her first assignment, wife challenges the trial court's decision to revise its opinion, arguing that it violated Multnomah County Supplementary Local Rule (SLR) 5.045, which provides that judges will not entertain motions for reconsideration. Wife requests as relief that we direct the trial court to enter a judgment consistent with its first opinion. We reject that assignment of error, because even if the court violated the rule, we would not grant the relief requested by wife.

In her next three assignments of error, wife challenges three aspects of the trial court's property division. First, we grant limited *de novo* review of the characterization of property located in Peru and find that wife acquired that property by gift and continuously held it separately. We further conclude that, on this record, the trial court is required to award the property to wife as her separate property. Second, we agree with wife that the trial court erred in considering the potential tax liability husband may have in the future to recapture depreciation on the two rental properties awarded to him in the property division, because it was mere speculation whether the taxable event of a sale of either property would occur. Third and finally, we conclude that the trial court did not abuse its discretion in equalizing $20,000 in debt that husband incurred for their child's school expenses. Accordingly, we reverse and remand the property division and otherwise affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Except with respect to one factual dispute, the parties do not request that we conduct *de novo* review. ORS 19.415(3)(b) (discretion to review equitable actions *de novo*); ORAP 5.40(8)(c) (we will exercise our discretion to review *de novo* only in exceptional cases). As to that factual dispute, which relates to whether real property located in Peru (the Carapongo property) was a gift to wife, we exercise our discretion to take limited *de novo* review, which we explain in our analysis. For purposes of this section, we set out the competing evidence adduced below on that issue to provide context for that analysis. In all other respects, "we are bound by the trial court's express and implicit factual findings if they are supported by any evidence in the record," *Morgan and Morgan*, 269 Or App 156, 161, 344 P3d 81, *rev den*, 357 Or 595 (2015), and we state the facts consistently with that standard.

A.   *Overview*

Wife and husband were married in July 2002 and have one child together, who was 12 years old at the time of the dissolution. Wife and husband separated in February 2015, and husband filed for dissolution in 2017. The parties resolved many issues by stipulated order and held open specific, unresolved issues for trial. The trial court held the dissolution trial over three days in August and October 2019[1] and issued a letter opinion five months later in March 2020 (the first opinion). After husband filed a letter objecting to that opinion, to which wife responded, the trial court revised its letter opinion in April 2020 (the revised opinion). After failing to respond to further letters from the parties that the court had invited, the court entered the judgment of dissolution consistent with the revised opinion in December 2020. Wife's appeal challenges the trial court's decision to revise its opinion and also three aspects of the trial court's final property division. For purposes of this opinion, we set forth only the facts relevant to those four challenges.

---

[1] There was an additional hearing day in November 2019, during which the court accepted the parties' stipulated parenting agreement. However, all the trial matters, including closing arguments, concluded in October 2019.

B.  *Depreciation Recapture Taxes on Oregon Properties*

The parties owned three residential real properties located in Oregon: (1) the 181st property, (2) the Gerhard property, and (3) the 174th property. They agreed that the three houses were marital assets; that wife would be awarded the 181st property, which was the marital home; and that husband would be awarded the Gerhard property and the 174th property, which were rental properties.

A disputed issue at trial was whether husband could reduce the net value of the two rental properties awarded to him by subtracting the "depreciation recapture taxes." Depreciation is taken over time on rental property, which lowers the tax burden of the person filing. Husband's expert, LaJoy, testified that the depreciation recapture tax is under section 1250 of the Internal Revenue Service (IRS) code and is incurred when you sell rental property by "break[ing] out what that depreciation is, and it's taxed at a higher tax rate than a capital gain[s] tax rate[.]" LaJoy explained that, as long as the code does not change, you will have to pay the depreciation recapture tax unless the property is sold at a loss or exchanged for other property under section 1031 of the IRS code. LaJoy assumed a property sale as of the time of trial at the stipulated fair market value and, based on prior tax returns, calculated those taxes as $27,990 for the Gerhard property and $15,010 for the 174th property. Husband testified that he had not decided whether he would sell or keep the Gerhard property going forward and that he did not intend to sell the 174th property.

C.  *Real Property in Peru*

During the marriage, wife acquired ownership interests in properties located in Peru, where her parents live. The only property at issue on appeal is the Carapongo property.

Wife's parents purchased the Carapongo property in 2009 for $21,516.50, when it was bare land. In 2012, they began construction of a residence and moved into that residence in about December 2018, while continuing to build on the land. The parties stipulated that, as of trial in

October 2019, the Carapongo property had a fair market value of $175,000.

Wife acquired sole title to the Carapongo property in January 2014, while she and husband were in Peru. However, husband first learned of wife's ownership of the Carapongo property through discovery before the dissolution trial. The document memorializing the transfer stated that wife, with a marital status of "single," purchased the property on January 7, 2014, for $8,000 US. The document provided that the money was paid in cash before the document was signed and with no proof of payment other than the execution of the document. The document also included a sworn statement from wife's parents that "we are selling the property for an amount lower than that for which it was acquired because the purchaser is our daughter."

Husband testified that, on the trip to Peru when the transfer occurred, he noticed that wife had brought more cash with her than she normally would have. Wife testified that she did not pay any money for the property. Wife also produced her bank records for a six-month period before their trip to Peru, which did not reflect any large withdrawals of cash.

Wife's mother testified about the transfer, calling it "a symbolic sale." Wife's mother explained that the sale did not involve the exchange of money, but a verbal agreement that wife and wife's sister would share in the property after wife's parents died, and that wife's mother intended to live on the property until her death. Wife's mother testified that they transferred the property to wife because both she and her husband were sick—she testified that "I thought I was going to die any moment." She also testified that she used the form for the transfer which reflects a sale because she was advised to do it as a sale.

D.   *Husband's Debt for Child's Private School Tuition*

During the pendency of the dissolution case, the parties' child was attending private school. In 2017, the court entered a stipulated order for temporary relief that, among other things, addressed school tuition. The order stated that the temporary relief in the order was "without

prejudice to either party as to the final disposition of any issues addressed in this Order." With respect to tuition, the order provided:

> "Until further order of the court or the written agreement of the parties, effective October 1, 2017, [w]ife shall pay $474.50 for tuition and childcare directly to the [private school], with [h]usband paying the remaining costs, taking into account subsidies from his parents."

At some point wife stopped paying her share of school expenses before the dissolution trial. Husband also testified that his parents had stopped contributing to school expenses three and a half years prior to the dissolution trial.

At trial, husband testified that he had inherited $100,000 from his aunt's estate during the pendency of the case and that he took out a line of credit against the inheritance. He used part of that money to pay approximately $20,000 toward the child's private school expenses. He testified that tuition was about $16,000 per year and that, including other school expenses like aftercare, it was closer to $20,000 per year. Husband argued that the trial court could consider the diminishment of the inheritance in the final "just and proper" division and provided an exhibit of bank accounts to show the amount by which his inheritance had diminished.

E.   *Proceedings Related to the Trial Court's Letter Opinions*

The trial court entered its first opinion on March 3, 2020, about five months after the dissolution trial concluded. The court made the express finding that "[w]ife was generally less credible in her testimony than [h]usband. There were several points where her testimony was contradicted by other evidence."

On the issue of the deduction of the depreciation recapture tax, for the Gerhard property, the court concluded that "LaJoy credibly testified that the depreciation recapture tax on the property will be $27,990.00. This evidence provided a reasonable and supportable basis for making an informed judgment about [h]usband's probable tax liability." The court reduced the net value of the Gerhard property by

$27,990. For the same reasons, the court reduced the net value of the 174th property by $15,010.

On the Carapongo property, the court concluded that "[t]his property was gifted solely to [w]ife by her parents in January 2014 and kept separate upon receipt and continually thereafter. Wife's parents live on this property. It is valued at $175,000.00 and awarded to [w]ife as her separate property."

The court also concluded that the joint debts would be equalized, which included two accounts with stipulated balances and the cost of the custody evaluation. The court concluded that, with respect to other debts, the court awarded the debts allocated individually on husband's spreadsheet without equalization.[2]

For the just and proper analysis, the court concluded:

"After application of the ORS 107.105(1)(f) statutory presumptions, the marital assets awarded to [h]usband total $412,955.00 and the marital assets awarded to [w]ife total $386,602.00. These assets are awarded without equalization. This slightly unequal distribution is just and proper under the circumstances; it preserves the assets awarded to each party and allows each party to be economically self-sufficient.

"The marital debt set forth in Section 6 ($26,469.00) is awarded to [h]usband, but it shall be equalized. Wife shall pay [h]usband $13,234.50 to equalize the marital debt."

With respect to the payment of the child's private school, the court provided that husband will pay 75 percent of the cost and that wife will pay 25 percent of the cost going forward, but did not mention any past contributions.

After receiving the first opinion, husband's counsel sent a letter to the court requesting findings under ORCP 62, stating that "there are omissions and corrections that are required before I can prepare a judgment." As relevant on appeal, husband largely asserted that the court failed to explain why it was just and proper to award the Carapongo

---

[2] Husband's debts included his credit card balances, promissory note to husband's parents, a line of credit with a balance of $36,816, and a bank loan. Wife's debts included wife's credit card balances.

property to wife as her separate property when there was evidence that wife paid $8,000 for it and failed to explain why debts were assigned to each party without equalization. In response, wife argued that husband's letter was improper under ORCP 62 B because it sought different rulings and was an improper motion for reconsideration under SLR 5.045. However, if the court revisited the rulings, wife also requested that her credit card debt be included in the joint debts for equalization.

In response to the parties' letters, the court entered the revised opinion on April 7, 2020. The court determined that, whether via ORCP 62 or otherwise, it was appropriate for husband to call potential errors to the attention of the court, citing *Sappington v. Brown*, 68 Or App 72, 682 P2d 775, *rev den*, 298 Or 238 (1984). As relevant on appeal, the court determined that it would revise its opinion regarding the Carapongo property and the joint credit card debt, which in turn required a correction to the just and proper distribution.

On the Carapongo property, the court stated:

"The [c]ourt previously found that this property was gifted to [w]ife by her parents; that is incorrect. This property was acquired by [w]ife's parents in July 2009, and [w]ife purchased the property from them in January 2014 for $8,000.00 (see Exhibit 11). While [w]ife testified that she did not make any such payment, her testimony is less credible than Exhibit 11 (a notarized document which refers specifically to that transaction). This property is not a gift, but rather is a marital asset subject to the presumption of equal contribution, and the presumption has not been rebutted. It is awarded to [w]ife and valued at $175,000.00 for purposes of equalization."

With respect to debts, the court revised its distribution, concluding that husband had joint debts to be equalized in the amount of $46,469.00, and wife had joint debts to be equalized in the amount of $9,206.06. The court concluded that "it is appropriate to consider the $20,000 spent by [h]usband on [child's] tuition as a joint marital debt for equalization."

Given those revisions, the court conducted a new just and proper analysis:

> "After application of the ORS 107.105(1)(f) statutory presumptions, the marital assets awarded to [h]usband total $412,955.00 and the marital assets awarded to [w]ife total $561,602.00, for a total of $974,557.00 in assets. Husband's marital debt totals $46,469.00 and [w]ife's marital debt totals $9,206.06, for a total of $55,675.06 in liabilities. All should be equalized: Wife shall owe Husband an equalizing judgment of $92,954.97."

Following the court's issuance of the revised opinion, and in response to the court's invitation to do so, both wife and husband filed objections and a request for corrections and additional findings. The court did not respond to those filings. About eight months later, in December 2020, the court entered a final judgment of dissolution that conformed with the revised opinion.

Wife appeals from that final judgment of dissolution, raising four assignments of error that challenge the court's decision to revise its first opinion and three aspects of the final property division.

## II.   ANALYIS

Under ORS 107.105(1)(f), the trial court's property division in the dissolution judgment must be "just and proper in all the circumstances." A trial court's just and proper division of marital property requires consideration of both the statutory factors in ORS 107.105(1)(f) and the equitable considerations that the Supreme Court has directed trial courts to consider "to promote consistency and predictability in dissolution decrees." *Kunze and Kunze*, 337 Or 122, 132, 92 P3d 100 (2004). We review the trial court's just and proper property division for an abuse of discretion. *Morgan*, 269 Or App at 161. Under that standard, "we will not disturb factual findings that are supported by evidence in the record, and we will disturb the court's decision only if it misapplied the statutory and equitable considerations required by ORS 107.105(1)(f)." *Id*. at 162 (internal quotation marks omitted); *see also Anderson v. Sullivan*, 311 Or App 406, 413, 492 P3d 118, *rev den*, 368 Or 702 (2021) ("Relying on a mistaken legal premise when exercising discretion is

error, regardless of whether the trial court would have had discretion to reach the same result based on a correct understanding of the law."). With those legal standards in mind, we address each of wife's assignments of error in turn.

## A.  *Challenge to the Court's Revision of its Opinion*

In her first assignment of error, wife argues that the trial court legally erred when it reviewed and acted on husband's letter, resulting in its revised opinion. Wife asserts that husband's letter was a motion for reconsideration that the trial court was not permitted to consider under SLR 5.045.[3] For relief, wife requests that we reverse and remand the judgment with instructions to the court to enter a judgment that conforms to the court's first opinion. However, even if the trial court erred in reviewing and acting upon husband's letter because it qualified as a motion for reconsideration under that rule, we would not grant the relief requested by wife.

A trial court retains authority to change its rulings until such rulings are reduced to a written order or judgment. *See Wrona and Wrona*, 66 Or App 690, 692, 674 P2d 1213 (1984) ("The general rule is that a statement from the bench does not constitute a judgment until reduced to an order, decree or judgment."). Wife has not argued that SLR 5.045 prevents the court from exercising that authority, and it is not readily apparent to us that it does.

Additionally, wife has not identified a legal source for her contention that the appropriate remedy for a court's violation of SLR 5.045 is for us to direct the court to enter a judgment conforming to its first opinion. The rule itself does not provide any consequences for a court's failure to abide by it, nor are any such consequences set out elsewhere in the supplementary local rules for the Fourth Judicial District *Cf. Monroe v. Harmon*, 158 Or App 196, 200, 973 P2d 392, *rev den*, 329 Or 126 (1999) ("Although UTCR 13.160 prescribes the time within which an arbitrator must schedule an arbitration hearing, it does not describe any consequences of noncompliance."); *Green v. Tri-Met*, 93 Or App 623, 624, 762

---

[3] As relevant, SLR 5.045 provides that "[n]o Motion for Reconsideration on any pre-trial, trial, or post-trial civil or criminal matter shall be heard, reviewed, or considered by any judge sitting in the Fourth Judicial District[.]"

P2d 1067 (1988) (failure of arbitrator to file decision within seven days, as required by supplementary local rule, did not render the award void, as argued by plaintiff, noting that the rule does not prescribe a consequence for the arbitrator's failure to comply). As a result, we reject wife's first assignment of error.

B.  *Challenge to the Court's Treatment of the Carapongo Property*

In her second assignment of error, wife requests that we take limited *de novo* review to make findings with respect to the Carapongo property and to conclude that the trial court is required to award that property to her as her separate property. As to findings, wife specifically requests that we disregard the finding in the revised opinion that wife paid $8,000 for the property and find, as the trial court initially did, that her parents gave the property to her as a gift. Additionally, wife requests that we find that her parents purchased the property as bare land, that they built a residence on the land with their own money and lived there, that they transferred the property to wife as part of their estate planning, that wife's mother planned to live there until she died, that it was wife's mother's intent that, after their death, wife would share the property with her sister, and that, at the time of trial, the land was worth $80,453 and the improvements were worth $94,457.

Under ORS 19.415(3)(b), we have discretion to "try the cause anew upon the record or make one or more factual findings anew upon the record." We will exercise that discretion "only in exceptional cases." ORAP 5.40(8)(c). Factors we consider as relevant to our decision, include, among others, "whether the trial court made express 'demeanor-based credibility findings,' whether 'the trial court's decision comports with its express factual findings or with uncontroverted evidence in the record,' and whether the 'finding[s] that the appellant requests' this court to make are 'important to the trial court's ruling' at issue on appeal." *Pulley v. Herndon*, 324 Or App 568, 573, 527 P3d 19 (2023) (quoting ORAP 5.40(8)(d)); *see also Morgan*, 269 Or App at 159 ("[A] lower court's reliance on a crucial finding that does not comport with the evidence in the record can be a reason to

exercise our discretion to review *de novo*." (Internal quotation marks omitted.)).

We conclude that this is an extraordinary case in which we will grant limited *de novo* review to make findings of fact relevant to the disposition of the Carapongo property. As explained below, our decision to take this limited *de novo* review is based primarily on the trial court's revision of its finding—which was an important finding to the overall property division—goes against reason and the substantial weight of the evidence and the court did not attempt to explain why it so fundamentally changed its view of the record between the first opinion and the revised opinion. ORAP 5.40(8)(d)(i), (ii); *Bush and Bush*, 297 Or App 699, 701-02, 444 P3d 1133 (2019) (granting *de novo* review where trial court's finding did not comport with the testimony and the factual issue was important to the court's ruling).

We first note that, although the court purported to make a credibility finding with regard to wife on this issue— that she was less credible than the Carapongo property transfer document—that finding is not the type of demeanor-based credibility finding to which we give any weight. ORAP 5.40(8)(d)(i) (a relevant consideration is whether the trial court made "demeanor-based credibility findings"). "As we have explained, to the 'extent that a credibility determination is based on a comparison of the witness' testimony with the substance of other evidence, this court is as well equipped as the trial court to make that credibility determination.'" *Dept of Human Services v. H. R. E.*, 297 Or App 247, 248 n 3, 441 P3d 726 (2019) (quoting *State ex rel Juv Dept v. G. P.*, 131 Or App 313, 319, 884 P2d 885 (1994)). We also note that the significant delay between the end of the dissolution trial and the court's first opinion—a five-month delay—and the dramatic change in the finding one month later, further suggests that the court's credibility determination was based on the written record and not any observable factors that the written record does not reflect. Finally, it is important here that the trial court did initially credit wife's and wife's mother's testimony when it found that wife had received the Carapongo property as a gift. The court's change from that initial credibility finding to the opposite

one a month later was not based on any further hearings or new observations by the court of the witnesses' demeanor.

Here, both wife and wife's mother testified that wife did not pay any money to her parents for the Carapongo property. Wife's mother testified that it was "a symbolic sale," that they transferred the property to wife because they were both sick, and that she intended to live on the property until she died, and that she had a verbal agreement with wife that wife would share in the property with wife's sister after she and wife's father died. She also testified that she used the form for the transfer which reflects a sale because she was advised to do it as a sale. Wife's mother provided a credible explanation as to why the transfer document recited a cash payment. There is also no dispute that the Carapongo property was kept separate from the marital estate at all times and that neither wife nor husband made any contributions to the property. At best, husband provided marginally relevant testimony that wife carried more cash with her than usual on the trip to Peru during which the transfer occurred. However, husband provided no evidence of how much cash wife had with her, where that cash came from, or what it was spent on. Moreover, the notarized transfer document itself provided that there was no exchange of money made in front of the notary, and as such, the recitation in the transfer document that such a transfer of money occurred is not more persuasive or more credible evidence than the direct testimony from wife and her mother. The trial court's finding that wife paid her parents $8,000 for the Carapongo property goes against reason and the substantial weight of the evidence.

Additionally, the factual finding of whether or not wife paid $8,000 for the Carapongo property, or whether the property was a separately held gift, is of particular importance in this case. The trial court's change in its finding in that regard dramatically changed the balance of the property division, resulting in wife being responsible for a large equalizing judgment, and our determination of that fact provides a basis for reversing or modifying the judgment. ORAP 5.40(8)(d)(iv).

Based on the foregoing, we exercise our discretion to grant limited *de novo* review in this case. In alignment

with the trial court's initial assessment, we find that wife acquired the Carapongo property by gift,[4] that she did not pay $8,000 to her parents for the property, that, at all times, she held the property separately from the marital estate, and that neither wife nor husband made any contributions to the property. Having made those findings, we also conclude that the trial court legally erred in concluding that the Carapongo property was a marital asset subject to the presumption of equal contribution, ORS 107.105(1)(f)(C). Instead, as we have found, the Carapongo property was a gift continuously held separately by wife. As a result, the Carapongo property is not subject to a presumption of equal contribution, ORS 107.105(1)(f)(D), and the legal presumption is that wife will be awarded the property without equalization. *Brush and Brush*, 319 Or App 1, 8, 509 P3d 124 (2022).

The remaining question is whether, under the equitable considerations identified in *Kunze*,[5] the court could consider the property as part of the marital estate as "just and proper under all the circumstances." Ordinarily, we would remand for the trial court to make that decision in the first instance. Here, however, the trial court already considered whether such equitable considerations applied when

---

[4] For purposes of ORS 107.105(1)(f)(D), "'property acquired by gift' means property acquired by one party through gift, devise, bequest, operation of law, beneficiary designation or inheritance." ORS 107.105(1)(f)(D)(ii).

[5] "[T]he factors identified by *Kunze* are ones that look at specific social and financial objectives—preservation of assets, economic self-sufficiency of the parties, and meeting the particular needs of the parties and their children—and whether the equities favor distributing a portion of separately held property to the other spouse due to how the parties treated that property in their joint finances." *Brush*, 319 Or App at 12.

We reject husband's suggestion at oral argument that an appropriate equitable consideration to treat the Carapongo property as part of the marital estate is the bare fact that wife held gifted separate property that had a greater value than husband's gifted separate property. The legislature specifically amended ORS 107.105(1)(f) in 2012 to provide that separately held gifts are not subject to the presumption of equal contribution. Husband's proposed equitable consideration would render that legislative directive largely meaningless. It would be a different matter if the existence of separately held gifts of unequal value implicated one of the social or financial objectives identified in *Kunze*, such as economic self-sufficiency of the parties, or if that fact supported a division of marital assets (not including the separate gifts) that was not equal, because it would be equitable under the circumstances. Those arguments, however, are not part of husband's argument here.

it issued the first opinion that characterized the Carapongo property as a gift and found none. Similarly, in the revised opinion, the court did not find any equitable considerations that favored distributing any portion of the other separately held assets or debts of either husband or wife to the other spouse. Finally, it is undisputed that the Carapongo property was not made part of the marital finances and that wife's parents lived on the property and exercised sole control over the property. In light of that record, and in light of the fact that excluding the Carapongo property from the marital estate results in a far more equitable division,[6] we instruct the court to award the Carapongo property to wife as her separate property, because it would be an abuse of the court's discretion to do otherwise.

## C.  *Challenge to the Court's Consideration of Depreciation Recapture Taxes*

In her third assignment of error, wife challenges the trial court reducing the value of the Gerhard property and 174th property in the amount of the depreciation recapture tax calculated by LaJoy. Although treatment of this specific tax is a matter of first impression in Oregon, wife argues that Oregon case law has already rejected similar tax strategies in a property division when there is no evidence that the sale of the real property is pending or reasonably likely to occur. Wife argues that, here, the sale of the rental properties was entirely hypothetical, and whether or not husband would ever have to pay the taxes was uncertain because, even if he sold one or both rental properties, the tax can be avoided with a section 1031 exchange under the IRS code.

Husband responds that the tax was not speculative because the tax liability existed at the time of trial and could be calculated because the tax rate is fixed. Husband asserts that, unless the IRS code changes or the properties are sold

---

[6] Taking into account the change in characterization of the Carapongo property, as well as our decision on the depreciation recapture taxes explained below, results in an award of marital assets to husband of $455,955 and to wife of $386,602—a differential of $69,353; as compared to the division in the revised opinion award of marital assets to husband of $412,955 and to wife of $561,602—a differential of $148,647.

at a loss, he will have to pay the tax, and, unlike capital gains taxes, the amount of the tax due is not dependent on a hypothetical sale amount for the property. Husband likens the tax to the tax liability on a retirement account, which courts regularly take into account in property divisions, because it is a tax he will have to pay eventually.

Under ORS 107.105(2), in determining the division of property, "the court may consider evidence of the tax consequences on the parties of its proposed judgment." To make adjustments based on tax consequences, "the court must be presented with evidence that specifically demonstrates 'a reasonable and supportable basis for making an informed judgment' about a party's likely tax liabilities." *Rykert and Rykert*, 146 Or App 537, 544, 934 P2d 519 (1997) (quoting *Alexander and Alexander*, 87 Or App 259, 261, 742 P2d 63 (1987)). "Where the amount of the tax consequence or the potential for tax liability is too speculative, the court will not take into account the possible effects of taxation in dividing property." *Id.* at 544-45. "We also have consistently refused to consider the tax consequences of the sale of a marital asset unless there is evidence that a sale is contemplated or reasonably certain to occur." *Bidwell and Bidwell*, 170 Or App 239, 244, 12 P3d 76 (2000), *adh'd to on recons*, 172 Or App 292, 18 P3d 465, *rev den*, 332 Or 305 (2001); *see also Follansbee and Ackerman*, 115 Or App 39, 41-42, 836 P2d 763 (1992) (consideration of tax consequences is only appropriate "when it is reasonably certain that a sale will occur and there is evidence that provides a reasonable basis on which to make an informed judgment as to the probable tax liability"). Because a court cannot take into account tax consequences that are too speculative, which is wife's sole contention on appeal, we review that legal conclusion for legal error. *See Johnson and Price*, 280 Or App 71, 84, 380 P3d 983 (2016) (taking that approach).

Applying those standards, we conclude that the trial court legally erred in reducing the value of the rental properties to account for depreciation recapture taxes. The evidence established that the depreciation recapture tax would be due on a sale of the real properties, if the properties are not sold at a loss or exchanged for other property

as permitted under section 1031 of the IRS code. The trial court found that LaJoy's testimony provided a reasonable and supportive basis on which to determine the tax liability. However, the undisputed evidence was that husband was not contemplating a sale of either property. As explained above, our case law requires that a sale of the property is contemplated or reasonably certain to occur for a court to take into consideration the tax consequences of a sale of a marital asset.

Husband urges us to treat the deprecation recapture tax the same as we treat future tax liability for drawing on a retirement account. Husband asserts that, as with a retirement account, he will be liable for depreciation recapture on the properties at some point and that the amount is calculable and thus can be taken into consideration even without a contemplated sale. We reject that argument because it misses the point—what is speculative here is whether the taxable event will ever occur, not whether there is a reasonable basis on which to calculate the tax if, hypothetically, the taxable event did occur.

We have held that tax consequences of drawing on a retirement account can be taken into consideration when there is evidence that the tax will have to be paid and evidence from which a rate can be determined. *See, e.g.*, *Cookson and Cookson*, 134 Or App 357, 363, 895 P2d 345 (1995) (expert testimony established that "husband would inevitably incur tax liability on the assets when he receives distributions from the pension" and the current tax rate to apply); *Alexander*, 87 Or App at 261 ("[I]t is a virtual certainty that husband will not receive his retirement account free of income tax liability[.]"). Here, LaJoy's testimony established no such certainty that husband will have to pay the depreciation recapture tax on the rental properties. Rather, his testimony established a certainty that husband will have to pay that tax *if* he sells the properties (and the sale is not at a loss or done in a section 1031 exchange). There was no evidence that any such sale would ever occur. Retirement accounts and real property are very different types of assets. Retirement accounts exist for the purpose of taking a future distribution from the account and may

even require taking distributions at retirement age—the taxable event is reasonably certain to occur. Without evidence that a sale of real property is contemplated, it is mere speculation that the taxable event is reasonably certain to occur, because the trial court is left to speculate about a party's future dealings with the property. Thus, the trial court legally erred in reducing the fair market values of the Gerhard property and the 174th property by the amount of depreciation recapture taxes calculated by LaJoy.

D. *Challenge to the Court's Equalization of Debt for Child's School Tuition*

In her fourth and final assignment of error, wife argues that the court erred in equalizing $20,000 in debt held by husband that he testified he used to pay for their child's private school expenses. Wife argues that the evidence of the debt was legally insufficient and that it went against the parties' predissolution stipulation that each party would be responsible for their own share of the school expenses as allocated in the stipulation. Wife argues that the trial court abused its discretion in ignoring the stipulation and *sua sponte* deciding to equalize husband's debt without also equalizing the school expenses that wife had paid pursuant to the stipulation.[7]

"Like marital assets, marital debt is presumptively evenly divided, with the ultimate division guided by consideration of what is just and proper." *Uwimana and Rwangano*, 209 Or App 693, 696, 149 P3d 257 (2006) (internal citations omitted). To determine whether an obligation is a marital debt, the court must focus on the use to which it was put. *Cirina and Cirina*, 271 Or App 161, 165, 350 P3d 504 (2015). "If the debt was incurred to pay family expenses, equal division of the debt is generally appropriate. If, on the other hand, the debt is properly attributed to only one of the parties, the debt should generally remain that party's responsibility." *Christensen and Christensen*, 253 Or App 634, 639-40, 292 P3d 568 (2012). Because we do not review *de novo*, "we will not disturb factual findings that are supported by

---

[7] Wife also makes arguments based on her assertion that the trial court erroneously found that the $20,000 in debt was *credit card* debt. We do not address those arguments because the trial court did not make such a finding.

evidence in the record, and we will disturb the court's decision only if it misapplied the statutory and equitable considerations required by ORS 107.105(1)(f)." *Morgan*, 269 Or App at 162 (internal quotation marks omitted).

We first address and reject wife's challenge to the legal sufficiency of the evidence for the court to find that the $20,000 debt existed. Husband testified that he used about $20,000 from a line of credit taken against his inheritance to pay for the child's school expenses and provided an exhibit that showed the total diminished amount of his inheritance. Husband also testified that the child's school tuition was around $16,000 per year, and closer to $20,000 with all expenses, including aftercare. It was also undisputed that wife had stopped paying her share of school expenses that she had agreed to pay in the 2017 temporary stipulation order. Husband's parents had also stopped helping with school expenses about three and a half years before the dissolution trial, even though the 2017 stipulation contemplated such assistance. That was sufficient evidence from which the trial court could find that husband had incurred debt to pay $20,000 toward child's school expenses.

We also conclude that the trial court did not abuse its discretion in equalizing the $20,000 between husband and wife. Although the court entered a temporary stipulated order that allocated the child's tuition between them pending the final dissolution, it is undisputed that wife did not continue to pay her stipulated share of those expenses. Additionally, the temporary order itself did not preclude the court from revisiting the expenses allocated in the order, providing that it was "without prejudice to either party as to the final disposition of any issues addressed in this Order." *See also Pollock and Pollock*, 357 Or 575, 591, 355 P3d 117 (2015) ("Although a trial court should not substitute its judgment by rejecting a settlement that falls within the range of what is just and proper, the court has the ultimate authority to arrive at a just and proper property division by determining whether a settlement falls within that range."). We are also unpersuaded by wife's arguments that the court's decision to equalize that debt was not equitable. Thus, we

conclude that the court did not abuse its discretion in equalizing husband's $20,000 debt in the final property division.

### III.  CONCLUSION

In sum, we take limited *de novo* review with respect to the Carapongo property and find that it was a gift to wife that she continuously held separately and, based on this record, conclude that the trial court is required to award that property to wife as her separate property. We also conclude that the trial court legally erred in reducing the value of the two rental properties awarded to husband by the depreciation recapture taxes. Finally, we conclude that the trial court did not err in equalizing $20,000 of debt that husband incurred for the child's school expenses. As a result, we remand for the court to make those corrections and to reconsider the final property division as is just and proper under all the circumstances.

Property division reversed and remanded; otherwise affirmed.